**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No.  18-md-02834-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AMAZON'S MOTION FOR SUMMARY JUDGMENT; GRANTING TWITCH'S MOTION FOR SUMMARY JUDGMENT; DENYING AMAZON'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Re: ECF 413, 541, 542] |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.,<br><br>        Plaintiffs<br>   v.<br><br>PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>        Defendants, | Case No.: 5:18-cv-00767-BLF<br>[Re: ECF 99, 155] |
| PERSONALWEB TECHNOLOGIES, LLC, a Texas limited liability company, and LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,<br><br>        Plaintiffs<br>   v.<br><br>TWITCH INTERACTIVE, INC. a Delaware corporation,<br><br>        Defendant. | Case No.: 5:18-cv-05619-BLF<br>[Re: ECF 67] |

United States District Court
Northern District of California

In this multidistrict litigation ("MDL"), PersonalWeb Technologies, LLC ("PersonalWeb") alleges patent infringement by Amazon.com, Inc. and Amazon Web Services, Inc., (collectively, "Amazon") and separately by dozens of Amazon's customers, related to the customers' use of Amazon's Simple Storage Service ("S3"), in combination with Amazon's CloudFront content delivery network. The Court has designated PersonalWeb's suit against Twitch Interactive, Inc. ("Twitch") as the representative customer case.

Before the Court are three motions: (1) Amazon's Motion for Judgment on the Pleadings on Infringement Claims against CloudFront for lack of standing (ECF 413), (2) Amazon's Motion for Summary Judgment of Non-Infringement and on the alternative ground that PersonalWeb lacks standing (ECF 541), and (3) Twitch's Motion for Summary Judgment of Non-Infringement and to Exclude the Testimony of Erik de la Iglesia (ECF 542). The Court heard oral arguments on Amazon's Motion for Judgment on the Pleadings on October 3, 2019 and on Amazon and Twitch's Motions for Summary Judgment on November 14, 2019 (the "Hearing"). For the reasons stated below, the Court (1) DENIES Amazon's Motion for Judgment on the Pleadings for lack of standing, (2) GRANTS Amazon's Motion for Summary Judgment of Non-Infringement; DENIES Amazon's Motion for Summary Judgment on the alternative ground that PersonalWeb lacks standing, and (3) GRANTS Twitch's Motion for Summary Judgment of Non-Infringement; DENIES Twitch's Motion to Exclude the Testimony of Erik de la Iglesia as MOOT.

## I.   INTRODUCTION

This MDL began with PersonalWeb bringing a number of patent infringement lawsuits against Amazon's customers for their use of S3 and CloudFront. Shortly thereafter, Amazon filed an action for declaratory judgment of noninfringement of five patents-in-suit: U.S. Patent No. 5,978,791 ("the '791 patent"); U.S. Patent Nos. 6,928,442 ("the '442 patent"); 7,802,310 ("the '310 patent"); 7,945,544 ("the '544 patent"); and 8,099,420 ("the '420 patent"). *See Amazon.com, Inc. et al v. Personal Web Technologies, LLC et al*, Case No. 5:18-cv-00767-BLF (N.D. Cal.) (the "Amazon Case"), ECF 1. PersonalWeb filed a counterclaim, in which it brought infringement counterclaims against Amazon on three of the five patents (the '442 patent, the '310 patent, and the

2

'420 patent).[1]  ECF 257.  At PersonalWeb's request, the United States Judicial Panel on Multidistrict Litigation centralized the declaratory judgment action and the customer cases before this Court. ECF 1.  To promote judicial efficiency, the Court selected a representative customer action (*PersonalWeb Techs., LLC v. Twitch Interactive, Inc.*, No. 5:18-cv-05619-BLF (N.D. Cal.) (the "Twitch Case")) to proceed and stayed all other customer cases pending resolution of the declaratory judgment action and the Twitch case.  ECF 313.  PersonalWeb asserts claims against Twitch on four of the five patents (the '442 patent, the '310 patent, the '420 patent, and 544' patent).  ECF 198.

On October 29, 2018, PersonalWeb served its infringement contentions.  In those contentions, PersonalWeb alleged that Amazon's S3 and/or CloudFront infringe the '442, '310, and '420 patents.  ECF 543-5.  On March 13, 2019, the Court granted summary judgment finding that PersonalWeb's claims against S3 are precluded.  ECF 381.  PersonalWeb's claims against CloudFront and Twitch remained.  On August 16, 2019, the Court issued its claim construction order.  Claim Construction Order, ECF 485.  The Court construed the claim term "unauthorized or unlicensed" as "not compliant with a valid license" and the claim term "authorization" as "a valid license."[2]  *Id.* at 12, 33.

Shortly after the Court issued the Claim Construction Order, Counsel for Amazon and Twitch reached out to PersonalWeb's counsel because Amazon and Twitch believed that PersonalWeb had no viable patent infringement theories in light of the Court's constructions.  ECF 507 at 1.  In response, PersonalWeb asserted that it understood "licensed/unlicensed" to mean "valid/invalid rights to content" and that it intended to apply that understanding to its infringement analysis.  *Id.* at 1-2.  Over Amazon and Twitch's strong objection and threats of sanctions, PersonalWeb's expert did apply that understanding to his infringement analysis in his expert report, which PersonalWeb served on Twitch on August 23, 2019.  *Id.* at 2.  The following business day, PersonalWeb filed a motion seeking clarification of the Court's construction – specifically, whether

---

[1] PersonalWeb denied that Amazon does not infringe the '544 and the '791 patents.  *See Amazon.com, Inc. et al v. Personal Web Technologies, LLC et al*, Case No. 5:18-cv-00767-BLF (N.D. Cal.), ECF 62 ¶¶ 51-56, 75-80.

[2] The Court construed several other claim terms, none of which are relevant to any of the issues currently before the Court.

United States District Court
Northern District of California

United States District Court
Northern District of California

the word "license" in the Court's construction "meant something different than 'valid rights to content' (*i.e.*, a narrower/license instrument-type of meaning)." *Id.* The Court rejected PersonalWeb's understanding of its Claim Construction Order and determined that the word "license" does not require clarification or supplementation. ECF 537.

Shortly thereafter, PersonalWeb moved for Entry of Judgment of Non-Infringement in the Amazon case. ECF 538. PersonalWeb argued that the Court's Claim Construction Order has "a dispositive effect on the claims and defenses at issue in this case, and as a consequence thereof, PersonalWeb cannot meet its burden of proving infringement." *Id.* at 1-2. Amazon opposed that motion for several reasons – but mainly because Amazon had raised additional non-infringement arguments at summary judgment (independent of claim construction), the resolution of which, Amazon argued, would result in a more complete record on appeal. *See* ECF 547. The Court agreed with Amazon and denied PersonalWeb's motion for Entry of Judgment. ECF 559.

Now, Amazon seeks summary judgment on the basis that (1) Amazon does not infringe the asserted patents and (2) PersonalWeb lacks standing to assert to any claim of the patents-in-suit against Amazon CloudFront. Amazon Mot. at 1, ECF 541. As for non-infringement, Amazon first asserts that it is entitled to summary judgment because, as construed by the Court, all asserted claims require "determination of license compliance" and PersonalWeb cannot identify such license determination by Amazon CloudFront. *Id.* at 8-9. Second, Amazon brings three additional grounds for infringement, which are unrelated to the Court's claim construction. Specifically, Amazon argues that there is no (1) permitting content to be provided or accessed, (2) determining whether a copy of a data file is present, or (3) comparison to a plurality of identifiers in how CloudFront functions. *See id.* at 9-13. PersonalWeb does not oppose entry of judgment of non-infringement in favor of Amazon based on the Court's Claim Construction Order, but it does oppose (1) Amazon's three new non-infringement grounds and (2) granting of summary judgment based on lack of standing. Opp'n to Amazon Mot. at 1-2, ECF 555.

Twitch also moves for summary judgment of non-infringement based on the Court's Claim Construction Order and the same three additional grounds. Twitch Mot. at 7-13, ECF 542. Twitch also moves to strike PersonalWeb's expert report due to its non-compliance with the Court's Claim

1    Construction Order.  *Id.* at 1.  Again, PersonalWeb does not oppose entry of summary judgment

2    based on the Court's Claim Construction Order.  Opp'n to Twitch Mot. at 1, ECF 551.  PersonalWeb

3    opposes, however, Twitch's additional grounds for non-infringement and the exclusion of its expert

4    report.  *Id.*

5        **A.    Summary of the Asserted Patents**

6        All four patents-in-suit[3] share a specification and each claims priority to a patent application

7    filed on April 11, 1995.  The '442 patent is titled "Enforcement and Policing of Licensed Content

8    using Content-Based Identifiers" and was issued on August 9, 2005.  ECF 406-13.  The '310 patent

9    is titled "Controlling Access to Data in a Data Processing System" and was issued on September

10   21, 2010.  ECF 406-2. The '544 patent is titled "Similarity-Based Access Control of Data in a Data

11   Processing System" and was issued on May 17, 2011.  ECF 406-10.  The '420 patent is titled

12   "Accessing Data in a Data Processing System" and was issued on January 17, 2012.  ECF 406-8.

13       The patents-in-suit generally relate to methods for identifying data items in a data processing

14   system—for example, methods for efficiently naming and identifying files on a computer network.

15   According to the (shared) specification, the problems with prior art systems include that "[t]he same

16   [file] name in two different [folders] may refer to different data items, and two different [file] names

17   in the same [folder] may refer to the same data item."  *See* '310 patent at 2:41–43.  To address this

18   problem, the patents-in-suit produce a content-based "True Name" identifier for a file or other

19   particular data item, in an effort to ensure that identical file names refer to the same data, and

20   conversely, that different file names refer to different data.  *See id.* at 6:20– 41, 34:4–12, 37:48–53.

21   In other words, the invention provides an identity for a given data item that "depends on all of the

22   data in the data item and only on the data in the data item."  *See id.* at 3:54–55.  "Thus the [True

23   Name] identity of a data item is independent of its name, origin, location, address, or other

24   information not derivable directly from the data, and depends only on the data itself."  *See id.* at

25   3:55–58.

26       The specification states that "[a] True Name is computed using a [hash] function . . . which

27

28   _____

     [3] PersonalWeb has not brought any infringement allegations as to the '791 patent and thus, the Court
     need not discuss that patent.

United States District Court
Northern District of California

United States District Court
Northern District of California

reduces a data block B . . . to a relatively small, fixed size identifier, the True Name of the data block, such that the True Name of the data block is virtually guaranteed to represent the data block B and only data block B." '310 patent at 12:21–26.  Larger files may be split into smaller segments. *See id.* at 13:45–49.  The hash function is applied to each segment, and the resulting values are strung together into an indirect data item.  *See id.* at 13:49–54.  The True Name of this indirect data item is then computed and becomes the True Name of the larger file.  *See id.* at 13:54–59.

The summary of the invention describes multiple uses for these True Names, including (1) to avoid keeping multiple copies of a given data file, regardless of how files are otherwise named; (2) to avoid copying a data file from a remote location when a local copy is already available; (3) to access files by data name without reference to file structures; (4) to maintain consistency in a cache of data items and allow corresponding directories on disconnected computers to be resynchronized with one another; (5) to confirm whether a user has a particular piece of data according to its content, independent of the name, date, or other properties of the data item; (6) to verify that data retrieved from a remote location is the intended data; and (7) to prove and track possession of a specific data item for purposes of legal verification.  *See* '310 patent at 4:1–52.  The patents-in-suit are directed to various specific aspects of this system.

### B.  The HTTP Protocol and Infringement Allegations Against Amazon CloudFront and Twitch Website

The parties do not dispute how the accused products operate.  All websites comply with HTTP protocol that governs communications between web browsers and web servers on the World Wide Web.  Redacted Technical Expert Report of Erik de la Iglesia ("de la Iglesia Rep.") ¶ 18, ECF 549-7; Responsive Expert Witness Report of Dr. Jon B. Weissman on Non-Infringement ("Weissman Rep.") ¶ 26, ECF 540-6; *see also* RFC 2616, HTTP 1.1 Standard ("RFC 2616") §§ 1.1, 1.3, ECF 543-3.   HTTP communications consist of messages sent back and forth between a client (*e.g.*, a web browser) and a web server.  HTTP 1.1 Standard § 1.1.  The HTTP protocol uses request "methods" (*e.g.*, GET, PUT, or POST) to transfer files specified by a Universal Resource Identifier ("URI").  de la Iglesia Rep. ¶ 22; Weissman Rep. ¶ 30.  For example, to display the Court's website, a web browser will send an HTTP request message to the Court's servers specifying the "method"

United States District Court
Northern District of California

as "GET" and the URI as "www.cand.uscourts.gov." *See* Weissman Rep. ¶ 29; de la Iglesia Rep. ¶ 22 ("A URI entered in a browser address bar will transmit an HTTP GET request for that URI to the destination server for the file specified within the URI."); *see also* RFC 2616 at § 3.2.  The server processes the request and returns a response—for example, the Court's homepage or an error message.  *See* de la Iglesia Rep. ¶ 22; Weissman Rep. ¶ 33.

As "an important element of operational efficiency in web design," the HTTP protocol specifies that web browsers can store copies of files locally in their cache.  de la Iglesia Rep. ¶ 25 (citing RFC 2616 § 13); Weissman Rep. ¶¶ 37, 39.  In this context, a "cache" refers to a file downloaded from a server and stored locally on the user's computer, which reduces the response time and network bandwidth consumption on future, equivalent requests.  RFC 2616 § 1.3; *see also* de la Iglesia Rep. ¶ 25; Weissman Rep. ¶ 37.   When a web browser requests a file (*e.g.*, an image or other object) for the first time from a server, the server sends a message that includes the requested file (or a 404 NOT FOUND error status) along with certain headers, which may include an entity tag ("ETag") corresponding to the file, "max-age," and "expires" headers.  de la Iglesia Rep. ¶¶ 24, 27; Weissman Rep. ¶¶ 37-41.  An ETag uniquely identifies a specific version of a file.  Weissman Rep. ¶ 41; de la Iglesia Rep. ¶ 33. The "max-age" directive sets an expiration time for the file, for example, in seconds, relative to the time of the request.  de la Iglesia Rep. ¶ 27; Weissman Rep. ¶ 40.  If, based on the "max-age" in the header, the file has not expired, the web browser uses the version of the file stored locally in the cache without making another request to the server.  Weissman Rep. ¶ 40; de la Iglesia Rep. ¶ 28; *see also* RFC 2616, § 13.2.4.

After expiration time of "max-age," HTTP provides a mechanism called "conditional GET request" for clients to determine whether the files in their cache may still be current.  de la Iglesia Rep. ¶ 29; Weissman Rep. ¶¶ 45-46.  To accomplish this, the HTTP protocol specifies use of a conditional GET request with an "If-None-Match" header and the ETag, requesting the server to compare the ETag of the cached file with the ETag of the current version of the file at the server. de la Iglesia Rep. ¶ 32 (citing RFC 2616 at § 14.26); Weissman Rep. ¶¶ 45-46.  If the ETag included in the conditional GET request matches the current ETag of the requested file, the server responds with a "304 NOT MODIFIED" status code and no body.  de la Iglesia Rep. ¶ 33; Weissman Rep. ¶

46. By sending a "304 Not Modified message" the server tells the browser that the locally-stored cached copy is current. de la Iglesia Rep. ¶¶ 32-33, Weissman Rep. ¶¶ 46, 48. The browser then displays the cached (and current) version of the file. *See* Amazon Mot. at 3-4; Opp'n to Amazon Mot. at 4. If the ETags do not match, the server will respond with a "200 OK" response and the current version of file. de la Iglesia Rep. ¶ 33; Weissman Rep. ¶ 46. The browser then displays the current (not cached) version of the file. Amazon Mot. at 3-4; Opp'n to Amazon Mot. at 4. The HTTP protocol does not specify that ETag be generated or implemented in a particular way. Weissman Rep. ¶¶ 42-43; de la Iglesia Rep. ¶ 33 (citing RFC 2616 §§ 13.3.3-4).

PersonalWeb contends that Amazon and Twitch's use of MD5 ETags (ETag values generated by applying the MD5 hash algorithm to the file content (*i.e.*, content-based identifiers)) to implement the HTTP protocol, including "max-age" headers, infringes the asserted claims. *See* Opp'n to Amazon Mot. at 4; Opp'n to Twitch Mot. at 4-5; Transcript of the Hearing held on November 14, 2019 ("Hr'g. Tr.") at 48:7-9, ECF 573 (Counsel for PersonalWeb: "It's the use of the protocol with content-based ETags with max-age values that constitutes much of the infringement on many of the alleged claims.")

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense. *See* Fed. R. Civ. P. advisory committee's note, 2010 amendments.

The moving party bears the burden of showing there is no material factual dispute, by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual

United States District Court
Northern District of California

issue for trial." *House v. Bell,* 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In cases like this, where the nonmoving party will bear the burden of proof at trial on a dispositive issue (*e.g.*, patent infringement), the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

## III.    DISCUSSION

Amazon seeks a declaration that it does not infringe five PersonalWeb patents.  Amazon also seeks summary judgment on the ground that PersonalWeb lacks standing to assert any claims of the asserted patents against Amazon's CloudFront.   Twitch seeks a summary judgment of non-infringement and the exclusion of PersonalWeb's expert report.

### A.    PersonalWeb's Expert Testimony

The Court first addresses the parties' disputes regarding PersonalWeb's expert testimony in the form of expert reports and declarations.

#### 1.    As to Amazon

Amazon argues that it is entitled to summary judgment because PersonalWeb failed to serve an expert report on infringement in accordance with the Court's scheduling order.  Amazon Mot. at 6-8; *see also* ECF 374 (setting deadline for opening expert reports on August 23, 2019). PersonalWeb concedes that it did not serve an infringement expert report but argues that its failure to do so was "Amazon-induced" and due to the parties' discussions of potential dismissal after the Court's Claim Construction Order was issued.  Opp'n to Amazon Mot. at 2-3.  PersonalWeb did, however, serve a timely expert report on Twitch, authored by Mr. Erik de la Iglesia.  *See* Amazon Mot. at 2.

United States District Court
Northern District of California

In its Motion, Amazon argues that the lack of an expert report means that PersonalWeb "failed to put forth any evidence of infringement and it thus cannot overcome summary judgment of noninfringement on those patents." Motion at 6. PersonalWeb responds that "Amazon is attempting to receive an essentially 'default' summary judgment on issues unrelated to the Claim Construction Order." Opp'n at 3. At the Hearing, however, Amazon conceded that PersonalWeb may properly rely on the substance of Mr. de la Iglesia's report served on Twitch in both Amazon and Twitch cases. *See* Hr'g. Tr., 13:15-18. This concession moots the "summary judgment by default" argument made by Amazon.

That said, PersonalWeb goes one step further and asks to the Court to consider an unsigned declaration authored by Mr. de la Iglesia (to be executed if the Court permits) and submitted with PersonalWeb's opposition brief. *See* Opp'n to Amazon Mot. at 3; ECF 549-6. Amazon moves to strike this declaration as untimely. Amazon Reply at 6, ECF 560.

As the Court mentioned at the Hearing, Rule 26 provides that a party must submit its expert witness disclosures "at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(2)(D). "Rule 37(c)(1) gives teeth to th[is] requirement[ ]" by automatically excluding any evidence not properly disclosed under Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

There is no dispute that Mr. de la Iglesia's unsigned declaration was not served according to the case schedule set by the Court – and instead, it accompanied PersonalWeb's opposition to Amazon's Motion for Summary Judgment. *See* ECF 374. In his unsigned declaration, Mr. de la Iglesia states: "I address in this declaration certain specific points raised by Amazon in its summary judgment motion[.]" Unsigned de la Iglesia Decl. ¶ 4, ECF 549-6. It is not proper for Mr. de la Iglesia to supplement his expert report to "revise" his disclosures in light of Amazon's challenges to his analysis brought in Amazon and Twitch's motions for summary judgment. *See Rovid v. Graco Children's Prods.*, No. 17-cv-01506-PJH, 2018 WL 5906075, at *11 (N.D. Cal. Nov. 9, 2018) (Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for

doing so has passed.") (quoting *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).  Accordingly, the Court STRIKES Mr. de la Iglesia's untimely and unsigned expert declaration and relies solely on his expert report served in the Twitch case.

### 2. As to Twitch

Unlike the scenario in the Amazon case, PersonalWeb served a timely expert report in the Twitch case.  *See* ECF 540-4.  Twitch moves to exclude this expert report because Mr. de la Iglesia did not properly apply the Court's constructions of the terms "unauthorized or unlicensed" and "authorization."  *See* Twitch Mot. at 3-4.  PersonalWeb responds that the incorrect application of the Court's claim construction was due to PersonalWeb's (incorrect) reading of the Claim Construction Order, which the Court rejected *after* the expert reports were served.  *See* ECF 537.  PersonalWeb has now withdrawn all portions of Mr. de la Iglesia's report that reference the incorrect construction and has submitted a redacted version of the report.  *See* ECF 549-7.  At the Hearing, Counsel for Twitch conceded that the redacted version of Mr.de la Iglesia's report is acceptable.  Hr'g. Tr., 12:13-16.  Accordingly, the Court DENIES Twitch's motion to exclude Mr.de la Iglesia's report as MOOT.

That said, Mr.de la Iglesia has also submitted a supplemental declaration in the Twitch case, to again, "address … certain specific points raised by Twitch in its summary judgment motion." ECF 551-1 ¶ 5.  For the same reasons stated above, Mr.de la Iglesia's declaration is untimely and is thus, STRICKEN.

### B. Non-infringement of the '544 and '791 Patents as To Amazon

Amazon argues that it is entitled to summary judgment as to the '544 and '791 patents because PersonalWeb failed to include any infringement allegations for these patents in its infringement contentions.  Amazon Mot. at 5-6; *see also* Infringement Contentions § II, ECF 543-3.  PersonalWeb does not respond to this argument in its opposition brief.  *See generally* Opp'n to Amazon Mot.  At the Hearing, counsel for PersonalWeb acknowledged that the '544 patent was never asserted against Amazon.  Hr'g. Tr. 14:20-15:1.  Additionally, PersonalWeb does not dispute that it has not brought forth any allegations of infringement of the '791 patent.  *See generally* Opp'n to Amazon Mot.  The Court agrees with Amazon that PersonalWeb's failure to include infringement

allegations in its infringement contentions entitles Amazon to summary judgment of noninfringement. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369-70 (Fed. Cir. 2006) (affirming grant of summary judgment for non-infringement where patentee's infringement theory was not disclosed in accordance with the Patent Local Rules of this District). Thus, Amazon's motion for summary judgment of non-infringement of the '544 and '791 patents is GRANTED.

### C.    Non-infringement of the '544 Patent as to Twitch

Twitch moves for summary judgment of non-infringement as to the '544 patent because PersonalWeb's expert does not offer any infringement opinions for the '544 patent and even admits that Twitch's website does not use that patent.  Twitch Mot. at 4 (citing de la Iglesia Rep. ¶ 195).

PersonalWeb responds that its failure to include any infringement analysis for the '544 patent in its expert report was "Twitch-induced" and due to the parties' discussions regarding dismissal after the Court's Claim Construction Order was issued.  Opp'n to Twitch Mot. at 3-4.  Specifically, PersonalWeb asserts that it agreed to dismiss its '544 patent claims with prejudice because of the Court's construction of the claim term "function of the one or more of part values."  *Id.* at 1; *see also* Hr'g. Tr., 14:21-23 (Counsel for PersonalWeb: "Based upon the Court's claim construction ruling, we are dropping the '544 with respect to Twitch).  Moreover, PersonalWeb's expert appears to concede this issue and states: "All of the Asserted Patents are required, in my opinion, to cover HTTP cache control using a content-based identifier as an ETag. The '544 patent is not required to practice this method of caching."  de la Iglesia Rep. ¶ 195.

The Court finds that PersonalWeb's purported reasons for not including the '544 patent in its expert report are irrelevant.  The fact remains that the only evidence in the record regarding infringement allegations of the '544 patent is PersonalWeb's expert conceding that there is no infringement.  *See* de la Iglesia Rep. ¶ 195.[4]  Thus, Twitch's motion for summary judgment as to the '544 patent is GRANTED.

---

[4] The Court notes that Mr. de la Iglesia did not include (and PersonalWeb did not ask the Court to consider) any infringement analysis as to the '544 patent in his now-stricken supplemental report at ECF 551-1.

### D. The Undisputed Ground for Summary Judgment: Determination of Compliance with a Valid License

There is no dispute that summary judgment in favor of Amazon is warranted based on the Court's construction of the claims in dispute. Specifically, the Court construed "unauthorized or unlicensed" in claim 20 of the '310 patent to mean "not compliant with a valid license," and "authorization" in independent claims 25 and 166 of the '420 patent to mean "a valid license." Claim Construction Order at 6, 12. As a result, all asserted claims require a determination that content complies with a valid license before access to that content is permitted.

Accordingly, to infringe the asserted patents, the accused Amazon CloudFront and Twitch website must determine whether a requested content complies with a valid license before permitting access to it. PersonalWeb concedes that Amazon CloudFront and Twitch website do not control whether or not access is compliant with a valid license. *See* PersonalWeb's Motion for Entry of Judgment of Non-Infringement at 4 ("[U]nder this construction, Amazon would not directly infringe because it would not be the party controlling whether or not the access is compliant with or under a license."), ECF 538; PersonalWeb's Reply in Support of its Motion for Clarification at 6-7 ("Mr. de la Iglesia never asserts that Twitch's infringement of the patent involves either (a) rights to use content beyond the method for a browser to render a particular webpage, or (b) any aspect of a user's legal rights to any content."), ECF 527; Opp'n to Twitch Mot. at 1 ("PersonalWeb does *not* oppose entry of judgment of noninfringement on all of its claims" if "a direct result of the Court's Claim Construction Order").

Accordingly, the parties agree that based on the Court's construction of the claims at issue, PersonalWeb cannot meet its burden of proving infringement and Amazon and Twitch are entitled to summary judgment of non-infringement. Amazon Mot. at 9, Opp'n to Amazon Mot. at 1, *see also* ECF 538 at 2; Twitch Mot. at 7-8, Opp'n to Twitch Mot. at 2. Thus, the Court GRANTS Amazon and Twitch's motions for summary judgment on the ground that CloudFront and Twitch website do not infringe any of the asserted claims, based on the Court's construction of the asserted claims.

### E. The Disputed Grounds for Summary Judgment

Although non-infringement based on the Court's claim construction is conceded, Amazon

United States District Court
Northern District of California

and Twitch argue that summary judgment is warranted on three additional grounds, unrelated to the Court's claim construction and based on the undisputed functionality of the accused products. Amazon Mot. at 9-13; Twitch Mot. at 8-13.  PersonalWeb opposes summary judgment based on these additional grounds.  Opp'n to Amazon's Mot. at 1-2; Opp'n to Twitch Mot. at 2.  Amazon and Twitch's arguments regarding these grounds, and PersonalWeb's opposition thereto, are substantively identical.  Moreover, PersonalWeb's expert report is identical in Amazon and Twitch cases because, as discussed above, the Court considers PersonalWeb's redacted expert report (served on Twitch) in both cases.  Accordingly, the Court's below analysis of the disputed grounds for non-infringement encompasses both Amazon and Twitch's motions.  The Court addresses each ground in turn.

### 1. Permitting or allowing content to be provided or accessed

Amazon and Twitch argue that summary judgment is warranted as to (1) claim 20 of the '310 patent, (2) claims 25 and 166 of the '420 patent, and (3) claim 11 of the '442 patent, because "[t]here is no permitting content to be provided or accessed."  Amazon Mot. at 9; Twitch Mot. at 9-11.  The relevant claim language is as follows:

- "based at least in part on said content-dependent name of said particular data item, the first device (A) *permitting the content to be provided to or accessed* by the at least one other computer if it is not determined that the content is unauthorized or unlicensed, otherwise, (B) if it is determined that the content is unauthorized or unlicensed, *not permitting the content to be provided to or accessed* by the at least one other computer." Claim 20 of the '310 patent (emphasis added).

- "(C) based at least in part on said ascertaining in step (B), *selectively allowing* a copy of the particular sequence of bits *to be provided to or accessed* by or from at least one of the computers in a network of computers, wherein a copy of the sequence of bits *is not to be provided or accessed* without authorization, as determined, at least in part, based on whether or not said first content-dependent name of the particular sequence of bits corresponds to one of the plurality of identifiers."   .   Claim 25 of the '420 patent (emphasis added).

- "(a2) *selectively permit* the particular data item *to be made available for access and to be provided to or accessed by* or from at least some of the computers in a network of computers, wherein the data item is *not to be made available for access or provided* without authorization," Claim 166 of the '420 patent (emphasis added).

- "*allowing* the file to *be provided* from one of the computers having an authorized or

14

licensed copy of the file."  Claim 11 of the '442 patent (emphasis added).

Each of the claims at issue include an element that either ***permits/not permits*** or ***allows/not allows*** content to be provided or accessed.  The parties agree that after a cached file's "max-age" expires, the browser sends a conditional GET request to the server with an "If-None-Match" header and the file's ETag, requesting the server to compare the ETag of the cached file with the ETag of the current version of the file at the server.  de la Iglesia Rep. ¶ 32 (citing RFC 2616 at § 14.26); Weissman Rep. ¶¶ 45-46; Amazon Mot. at 3-4; Twitch Mot. at 5; Opp'n to Amazon Mot. at 6, 7; Opp'n to Twitch Mot. at 6.  The parties also agree that when Amazon's CloudFront or Twitch's server receives a conditional GET request, it compares the ETag of the file stored locally in the user's cache with the ETag of the current version of that file on the server.  Amazon Mot. at 4; Twitch Mot. at 5; Opp'n to Amazon Mot. at 7; Opp'n to Twitch Mot. at 6.  If the ETags match, the server responds with a "304 Not Modified" message, indicating that the locally-stored cached version is current.  Amazon Mot. at 4; Opp'n to Amazon Mot. at 7; Twitch Mot. at 5; Opp'n to Twitch Mot. at 6-7.  If the ETags do not match, the server responds with a "200 OK response" and the new version of the file.  *Id.*

PersonalWeb argues that (1) when Amazon's CloudFront or Twitch's server finds there to be an ETag match, "it makes a determination ***to permit*** a browser to keep using the cached content and sends a 304 NOT MODIFIED message to the browser" and (2) when there is no ETag match, "it makes a determination ***not to permit*** a browser to keep using cached content and sends an HTTP 200 OK response with new content, which the browser will use instead of cached content in accordance with the HTTP protocol specification RFC 2616."  Opp'n to Amazon Mot. at 7; Opp'n to Twitch Mot. at 6-7 (emphasis added).

Amazon and Twitch reject this theory and argue that the server's response to a conditional GET request where the ETags do not match (*i.e.*, the "200 OK" status and the new file) does not "not permit"[5] the user "from accessing and viewing old expired content previously cached by his or

[5] PersonalWeb takes issue with Amazon and Twitch's use of the terms "prohibit" and "prevent" to describe the claim language and argues that Amazon and Twitch are seeking a new claim construction for the terms "permit/not permit" and "allow/now allow" they did not seek during claim construction proceedings.  Opp'n to Amazon Mot. at 5; Opp'n to Twitch Mot. at 9.  Amazon and

her browser." Amazon Mot. at 10; Twitch Mot. at 9.  In Amazon and Twitch's view, PersonalWeb's interpretation of the server's functionality means that when the ETags do not match, the server is not permitting access to the object the user already has, which Amazon argues is incorrect.  *See* Hr'g. Tr. 30:5-7 (Amazon's Counsel: "What [PersonalWeb is] saying is that when those ETags don't match, the server is not permitting access to the object the user already has.").  To demonstrate its point, Amazon and Twitch rely on the HTTP standard's requirement that the web browser must display expired content when the user (1) requests to see the browser history and (2) uses the browser's "back" button.  Amazon Mot. at 10 (citing Weissman Rep. ¶¶ 55-56; RFC 2616 at § 13.13); Twitch Mot. at 9-10.

PersonalWeb does not disagree that the expired cached content is available to the user through the browser's "history" and "back" functions, but it argues that it is only accusing "a specific transaction" between the server and the browser (*i.e.*, the processing of a conditional GET request) and therefore, "Amazon[/Twitch]'s example of offline viewing of pages is irrelevant because offline viewing by definition does not involve communications with the server."  Opp'n to Amazon Mot. at 5; Opp'n to Twitch Mot. at 9-10.  According to PersonalWeb, Amazon and Twitch's examples of offline viewing are simply non-infringing uses and "have nothing to do with whether the claim is infringed." Opp'n to Amazon Mot. at 5-6; Opp'n to Twitch Mot. at 10.  Accordingly, PersonalWeb argues that Amazon's position is tantamount to a construction equating "not permit" or "not allow" to "prevent access by any means forever," and should be rejected.  Opp'n to Amazon Mot. at 5; Opp'n to Twitch Mot. at 9.  Amazon and Twitch respond that offline viewing examples simply confirm that "there is no revocation of permission or ability to access when new content is provided [in response to a conditional GET request]."  Hr'g. Tr., 31:9-13.

In short, the parties do not disagree as to what a CloudFront or Twitch's server does when it receives a conditional GET request and the ETags do not match: the server responds with a "200

---

Twitch respond that they are not seeking any new claim construction and that they simply used the verbs "preventing" or "prohibiting" as mere synonyms of "not permitting" in order to avoid double negatives such as "Amazon's technology does not 'not permit' access to content cached at web browsers."  Amazon Reply at 1; *see also Twitch* Reply at 2.  To avoid any doubt, the Court will not use any synonyms in this Order at the cost of utilizing awkward double-negatives.

United States District Court
Northern District of California

OK" response message and a copy of the current version of the requested file, which the browser then displays to the user.   However, the parties appear to have different conceptions of what it means when the cached (and stale) version of the file is not displayed to the user.  PersonalWeb believes that the server—by virtue of sending the new/current version of the content—does "not permit/not allow" the browser to continue to use the cached content – which PersonalWeb argues meets the claim limitations and is consistent with the plain and ordinary meaning of "allow" and "permit."  *See* Opp'n to Amazon Mot. at 5-9; Opp'n to Twitch Mot. at 5-10.  Amazon and Twitch disagree and argue: "If the web browser is allowed to use stale content, as the HTTP protocol specifies and PersonalWeb admits, how does it also somehow lack permission to use that content?" Amazon Reply at 3, Twitch Reply at 4 (same).

Non-infringement is a question of fact that "is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement."  *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).  As with any summary judgment motion, the Court views all facts in a light most favorable to the nonmoving party and draws all reasonable inferences in its favor.  *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000).  "Summary judgment regarding whether or not the claims read on the accused device, 'can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims.'"  *Asetek Holdings, Inc. v. CoolIT Sys.*, Inc., No. C-12-4498 EMC, 2014 WL 4090400, at *5 (N.D. Cal. Aug. 19, 2014) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999)).

Viewing the evidence in the light most favorable to PersonalWeb, the Court concludes that the evidence does not show that CloudFront/Twitch servers permit/not permit or allow/not allow content to be provided or accessed.  The Court agrees with PersonalWeb that the claims require the system to either allow/permit or not allow/not permit access to a file based on the processing of a content-based name for that file "in the process of a specific transaction between the browser and the server" (*i.e.*, the processing of a conditional GET request received from a browser).  *See* Opp'n to Amazon Mot. at 5; Opp'n to Twitch Mot. at 9.  The problem with PersonalWeb's argument, however, is that nothing in the record shows that the server does anything more than (1) compare

United States District Court
Northern District of California

1    ETags, (2) confirm that cached version is still current, and (3) if not, send the newest version.  None

2    of these steps "not permit/not allow" content (*i.e.*, stale cached file) to be accessed or provided.  At

3    best, the evidence shows that when ETags are not a match, the web browser displays the new version

4    of the content (which it receives with the "200 OK" message") and thus, does "not provide/not

5    show" the stale content to the user – but the browser "not providing/not showing" is not the same

6    as CloudFront/Twitch server ***not permitting*** the content to be provided or accessed.  The claims

7    require an affirmative allow/permit or not allow/not permit step and those elements cannot simply

8    be inferred from entirely different functions in the accused products (*i.e.*, the server sending a new

9    version of the content and the browser displaying that new version).

10           As the parties agree, the browser continues to have access to the stale cached file via the

11   browser's "history" and "back" functions.  It is true that the examples Amazon provides are offline

12   scenarios, but they do demonstrate that at all times, the browser is "permitted" to access/provide the

13   stale content and is not "not permitted" to do so by the server.  That said, the Court need not consider

14   Amazon's offline examples because, as explained above, the undisputed functionality of Amazon's

15   CloudFront and Twitch's server do not include any form of "permission" whatsoever.  The Court is

16   persuaded by Amazon and Twitch's argument that the server's response to a conditional GET

17   request is "a version control mechanism" and does not "not permit" the browser from continuing to

18   use the version it already has.  *See* Amazon Reply at 2; Twitch Reply at 3.  The Court disagrees with

19   PersonalWeb that Amazon is seeking a new claim construction, requiring that the accused product

20   "must 'prevent' access by any means forever."  Opp'n to Twitch Mot. at 9; Opp'n to Amazon Mot.

21   at 5.  There is simply no evidence of not permitting/not allowing of any kind by the accused products.

22           This conclusion is consistent with PersonalWeb's representation to the Patent Office.  In the

23   *inter partes* review proceeding of the '310 patent, PersonalWeb explained that "there is no logical

24   reason to have modified [the prior art] to implement a system for checking whether that same local

25   computer 20 is authorized to access a previous version of the same file" and "the local computer 20

26   is permitted to access a prior version of a file if that computer already has the current version of that

27   file."  Patent Owner's Response to IPR2013-00596, Paper 15 at 19-20, ECF 561-6.  This makes

28   sense, because nothing in the record shows that the servers have control over the browser's access

1    to its cached files.

2        Accordingly, the Court GRANTS Amazon's motion for summary judgment on the ground

3    that the undisputed evidence fails to show that Amazon/Twitch servers permit/not permit or

4    allow/now allow content to be provided or accessed.

5                **2.    Determining whether a copy of the data file is present using the name**

6        Next, Amazon and Twitch move for summary judgment of non-infringement of claim 10 of

7    the '442 patent[6], which requires "determining, using at least the name, whether a copy of the data

8    file is present on at least one of said computers,"  because "ETags are not used by CloudFront to

9    locate files or to determine if they are present."  Amazon Mot. at 11; *see also* Twitch Mot. at 11

10   ("ETags are not used to locate files in the accused Twitch website or to determine if they are

11   present.").  The parties agree that PersonalWeb maps the "name" limitation in this claim to an ETag

12   received in the conditional GET request from the web browser at the server.  de la Iglesia Rep. ¶

13   109; Amazon Mot. at 11; Twitch Mot. at 11.  The parties also agree that files are located by their

14   assigned URI/URL and not ETags.  Weissman Rep. ¶ 161; de la Iglesia Rep. ¶ 141; *see also* Opp'n

15   to Amazon Mot. at 11 (noting that by using the URI, Amazon can determine "that a file having that

16   URI is located at a given computer"); Opp'n to Twitch Mot. at 11 (same as to Twitch).  With that,

17   Amazon and Twitch argue that "before the ETags can be compared, the files must *already* have

18   been located, and are thus deemed present" and accordingly, the comparison of ETags "determines

19   only if two files match, not whether the files are present in any computer system."  Amazon Mot. at

20   12; Twitch Mot. at 11.

21       PersonalWeb responds that Amazon and Twitch mistake its infringement read and explains

22   its theory as follows:

23              [I]f a CloudFront PoP server[/Twitch] determines that a file at the
              browser cache is a copy of the file at the server, then the CloudFront
24              PoP server[/Twitch] can send an HTTP 304 message instructing the
              browser to keep using the cached copy for some extended time period.
25              And, conversely, if the CloudFront PoP server[/Twitch] determines
              that a copy of the file at the CloudFront PoP[/Twitch] server is not
26              already present at the browser cache, the CloudFront PoP
              server[/Twitch] can send an HTTP 200 message to provide the

27

28   ────────────────
     [6] Claim 11 of the '442 patent, which depends on claim 10, contains the same language.

                                              19

> browser with a copy and instructions for how long of a period the browser can use the copy without having to check back with the CloudFront PoP server[/Twitch] whether it may keep using it.

Opp'n to Amazon Mot. at 9-10, Opp'n to Twitch Mot. at 10.   According to PersonalWeb, by comparing ETags, Amazon or Twitch's server determines whether the file located at the browser is "actually a *copy* of the file located at the server" (*i.e.*, that the content of the file at the browser cache is a copy of the content of the file at the server).   Opp'n to Amazon Mot. at 10 (emphasis added); Opp'n to Twitch Mot. at 11.   PersonalWeb argues that "[i]t is not a file that is being determined as present; the claim specifically requires determining whether a 'copy' of a file is present" and "[o]nly when the two files have the same content is one a 'copy' of the other."   Opp'n to Amazon Mot. at 10, 11; Opp'n to Twitch Mot. at 11, 12.

Additionally, PersonalWeb argues that Amazon is seeking a construction that equates "determining, using at least the name, whether a copy of the data file is present on at least one of said computers" to "determining, using *only* the name, whether a copy of the data file is present on at least one of said computers."   Opp'n to Amazon Mot. at 2; Opp'n to Twitch Mot. at 2.   In PersonalWeb's view, both URI/URL and ETags are required "to determine whether the file at the browser cache has the same content as the file at the webpage server."   Opp'n to Amazon Mot. at 11; Opp'n to Twitch Mot. at 11.

PersonalWeb's expert, however, does not seem to be onboard with the infringement theory advanced in PersonalWeb's opposition to Amazon and Twitch's motions for summary judgment. Mr. de la Iglesia does not distinguish "locating a file" from "determining the presence of a copy of the file" and opines: "The name (ETag value) is used to *locate a file* as present at least in a browser cache when there is an ETag match, and *locate a file* as present in the Twitch [or Amazon] web servers if there is an ETag mismatch."   de la Iglesia Rep. ¶ 112 (emphasis added); *see also* Hr'g. Tr. 78:15-16 (PersonalWeb's Counsel: "The last clause of the last sentence of paragraph 112 [of Mr. de la Iglesia's report] is not a model of clarity[.]").   Put differently, in Mr. de la Iglesia's view,  if the ETag received in the conditional GET request matches the ETag of the file with the same URL/URI on the server, the Amazon/Twitch server determines that the file is present at the browser, and if the ETags do not match, then the Amazon/Twitch server determines that the file is present at the server.

United States District Court
Northern District of California

1    PersonalWeb's arguments fail for two reasons.  First, PersonalWeb may not replace its

2    expert's analysis with attorney arguments to create a factual dispute.  "There must be sufficient

3    substance, other than attorney argument, to show that the issue requires trial."  *Glaverbel Societe*

4    *Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995); *see also*

5    *Invitrogen Corp. v. Clontech Labs.*, Inc., 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated

6    attorney argument regarding the meaning of technical evidence is no substitute for competent,

7    substantiated expert testimony.").    Thus, to the extent that PersonalWeb's arguments are

8    inconsistent with Mr. de la Iglesia's expert testimony, the Court relies on the expert's stated opinion.

9    Second, the Court is persuaded by Amazon and Twitch's argument that "PersonalWeb's

10   infringement theory is unavailing even if the claims require a determination of whether a 'copy,'

11   and not the file itself, is present."  Amazon Reply at 5; Twitch Reply at 6.  The claim language

12   requires "obtaining a name for a data file" – and PersonalWeb maps the "name" to the ETag received

13   in a conditional GET request, which corresponds to the cached file at the browser.  de la Iglesia Rep.

14   ¶ 109.    The claim also requires using "***the name***" (*i.e.*, ETag received in the conditional GET

15   request) to determine "whether a copy of ***the data file*** [*i.e.*, the cached file] is present[.]"  *See* '442

16   patent, claim 10.  If the ETag of the cached file does not match the ETag of the file on the server,

17   the file on the server is neither the same nor a copy of the cached file associated with the ETag.

18   Therefore, the ETag is not used to determine the presence of a copy of ***the data file*** (*i.e.*, the cached

19   file) on the server.

20   Accordingly, the Court GRANTS Amazon and Twitch's motions for summary judgment on

21   the ground that "[t]here is no determining whether a copy of the data file is present using the name."

22   ### 3.  Comparison to a plurality of identifiers

23   Finally, Amazon and Twitch argue that they are entitled to summary judgment as to claims

24   25 and 166 of the '420 patent because "CloudFront does not compare the received ETag with

25   *multiple* ETags as the claims require."[7]  Amazon Mot. at 12; Twitch Mot. at 12 ("Mr. de la Iglesia

26

27   _____

28   [7] In its motion, Amazon also moved for summary judgment of claim 69 of the '310 patent on the same ground, but that claim is no longer asserted in this case.  *See* Amazon Mot. at 12-13; Opp'n to Amazon Mot. at 11.

points to no evidence showing that Twitch's website compares the received ETag with multiple

ETags as the claims require").  Claim 25 of the '420 patent provides, in relevant part, as follows:

> ascertaining whether or not said first content-dependent name for the particular sequence of bits *corresponds to one of a plurality of identifiers*, said plurality of identifiers corresponding to a plurality of data items,

Claim 166 of the '420 patent (emphasis added). Similarly, claim 166 of the '420 patent requires:

> (a2) selectively permit the particular data item to be made available for access and to be provided to or accessed by or from at least some of the computers in a network of computers, wherein the data item is not to be made available for access or provided without authorization, as resolved based, at least in part, on whether or not at least one of said one or more content-dependent digital identifiers for said particular data item corresponds to an entry in one or more databases, each of said one or more databases comprising a plurality of identifiers, each of said identifiers in each said database *corresponding to at least one data item of a plurality of data items*, and each of said identifiers in each said database being based, at least in part, on at least some of the data in a corresponding data item.

Claim 166 of the '420 patent (emphasis added).

The parties agree that under PersonalWeb's infringement read, the content-dependent name/digital identifier is the ETag in a conditional GET request.  de la Iglesia Rep ¶ 141; Amazon Mot. at 12; Twitch Mot. at 12.  Amazon and Twitch argue that CloudFront/Twitch server "performs a one-to-one comparison" of ETags and therefore, "cannot meet the requirement of the one-to-many comparison recited in the asserted claims."  Amazon Mot. at 12-13; Twitch Mot. at 12.

PersonalWeb does not dispute the one-to-one comparison of ETags, but argues that the claim language "does not require that a content-dependent digital identifier be compared to more than one of a plurality of identifiers in a database, only that it be *ascertained* whether or not it *corresponds to one of the entries in the database*, which Amazon[/Twitch] does."  Opp'n to Amazon Mot. at 12 (emphasis added); Opp'n to Twitch Mot. at 12-13.   But PersonalWeb fails to explain how CloudFront/Twitch's one-to-one comparison of ETags "ascertain[s] whether or not [the ETag in a conditional GET request] corresponds to one of a plurality of identifiers" as required by the claims. In fact, PersonalWeb's expert reiterates the one-to-one comparison of ETags:

> [T]he Accused Instrumentality will read the MD5 ETag value and the URL in the conditional GET request, look up the URL in its list of URLs, read the current ETag value for the matching URL, and see if that current ETag value for the URL matches the ETag value received in the request.

de la Iglesia Rep. ¶ 141.  PersonalWeb's infringement theory effectively reads the "correspond[ing] to a plurality of identifiers" out of the claim language.  This is not permissible.  *Wolverine World Wide, Inc. v. Nike*, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994) ("It is well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.") (citing *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532–33 (Fed. Cir. 1987)) (alterations omitted).

Moreover, it is only logical to expect that in order for the invention to "ascertain[] whether or not [the ETag in a conditional GET request] corresponds to one of a plurality of identifiers," there must be some sort of comparison or matching of one identifier to many (more than one).  This is supported by PersonalWeb's representation to the Patent Office.  In arguing why prior art did not render claim 166 of the '420 patent invalid, PersonalWeb stated that the prior art "never ***compares*** [an identifier] with a plurality of identifiers."  Patent Owner's Preliminary Response to IPR2014-00058, Paper 9 at 12 (emphasis added), ECF 561-7.

The Court GRANTS Amazon and Twitch's motions for summary judgment on the ground that PersonalWeb has not presented evidence of "corresponding to a plurality of identifiers."

### F.    PersonalWeb's Standing

Amazon challenges PersonalWeb's standing to assert infringement claims against Amazon's CloudFront in two motions.  Amazon first filed a motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).  Mot. JOTP, ECF 413.  After the Court heard oral arguments on that motion, Amazon moved for summary judgment on the same ground.  Amazon Mot. at 13-14.  Because the arguments presented by the parties in both of Amazon's motions substantially overlap, the Court resolves both here.  For the reasons stated below, Amazon's Motion for Judgment on the Pleading and Motion for Summary Judgment on the alternative ground that PersonalWeb lacks standing are DENIED.

United States District Court
Northern District of California

1    Amazon asserts that PersonalWeb lacks the right to accuse CloudFront of infringing the

2  asserted patents because of PersonalWeb's contractual obligations to its co-party, Level 3

3  Communications, Inc. ("Level 3").  It is undisputed that PersonalWeb's rights to the patents asserted

4  in this case are governed by the License Agreement between Kinetech Inc. (PersonalWeb's

5  predecessor) and Digital-Island, Inc. (Level 3's predecessor), dated September 1, 2000 (the

6  "Agreement").  *See* Amazon Mot. at 13; Opp'n to Amazon Mot. at 12.  It us undisputed that the

7  Agreement specifies that PersonalWeb and Level 3 each own a fifty percent (50%) undivided

8  interest in and to the asserted patents.  *See* Mot. JOTP at 2, ECF 413; Opp'n to Mot. JOTP at 2, ECF

9  442.

10    The Agreement divides certain enforcement rights between the co-owners of the asserted

11  patents (*i.e.*, PersonalWeb and Level 3).  Accordingly, Level 3 has the "first right to institute suit

12  for infringement(s)" in Level 3's Field of Use.  Agreement § 6.4.1, ECF 414-1. Level 3's Field of

13  Use is defined as:

14    the infrastructure services of one or more managed global content
     delivery networks (CDNs) in which a customer's content is served
15    faster, on average. than if served from the customer's origin server or
     the CDN can typically serve more users than a customer's origin
16    server alone; where at least some customer content on origin servers
     is replicated to possibly many alternate servers of the CDN, many of
17    said CDN servers being at ISP sites. and where users' requests for
     origin content are satisfied by directing them to CDN servers.
18

19  Agreement, Schedule 1.2. To be clear, the Agreement specifies conditions, under which

20  PersonalWeb may sue in Level 3's Field of Use.  *See* Agreement § 6.4.1.  But in this suit,

21  PersonalWeb has asserted infringement claims in its own field, not Level 3's.   First Am.

22  Counterclaim ¶ 3, ECF 257 ("All infringement allegations, … are made by PersonalWeb alone, and

23  not by Level 3.  PersonalWeb alleges that the infringements at issue in this case all occur within,

24  and are limited to, the PersonalWeb Patent Field.")[8].  At all times during this litigation, both

25  PersonalWeb and Level 3 have been parties to this MDL and all underlying lawsuits. *See generally*

26

27  _____
    [8] PersonalWeb and Level 3 define "PersonalWeb Patent Field" as "fields other than the Level 3
28  Exclusive Field" in which PersonalWeb has, among other rights, certain defined rights to use,
    practice, license, sublicense, enforce and/or litigate the Patents-in-Suit.  First Am. Counterclaim ¶
    2.

1    ECF 1; 62.

2        The parties' dispute arises from Amazon's claim that PersonalWeb's allegations against

3    Amazon's CloudFront are in Level 3's Field of Use – not PersonalWeb's.  Amazon argues that "the

4    only reasonable interpretation" of the Agreement is that Level 3's exclusive Field of Use is content

5    delivery networks ("CDN") and because CloudFront is a CDN, patent infringement claims against

6    CloudFront are within Level 3's Field of Use.  Amazon Mot. at 13-14.   Accordingly, Amazon

7    asserts that because PersonalWeb does not have the right to enforce the asserted patents in the field

8    of CDNs, it lacks standing to accuse CloudFront of infringement.  *See id.*; Mot. JOTP at 4-6.  For

9    its part, Level 3, although a Plaintiff in this case, confirms that it is "not asserting patent infringement

10   in this case" and "takes no position regarding Amazon's Motion for Judgment on the Pleadings."

11   ECF 429 at 1.

12       PersonalWeb does not dispute that CloudFront is a CDN but responds that Level 3's Field

13   of Use does not include "*all* CDNs" and is limited to "CDN servers being at ISP sites."  Opp'n to

14   Amazon Mot. at 12-13.  PersonalWeb points to testimony of individuals who participated in the

15   negotiations that led to the Agreement to clarify what the contracting parties intended to include in

16   Level 3's Field of Use.  *Id.* at 12-15.  In PersonalWeb's view, at a minimum, "there are disputed

17   issues of material fact on issues of construction of the Agreement."  *Id.* at 12.  In addition,

18   PersonalWeb argues that any dispute regarding the scope of Level 3's Field of Use (and whether or

19   not it encompasses Amazon's CloudFront) is between the parties to the Agreement (*i.e.*,

20   PersonalWeb and Level 3) and Amazon has no basis to challenge PersonalWeb's standing because

21   the two co-owners have been parties to this action since its inception.  Opp'n to Mot. JOTP at 2-5.

22       The Court agrees with PersonalWeb that Amazon's challenge to PersonalWeb's standing to

23   bring suit against CloudFront is misplaced.  The Patent Act provides that a "patentee" has the right

24   to initiate a "civil action for infringement of [its] patent."  35 U.S.C. § 281. The term "patentee"

25   encompasses both the owner of the patent and the assignee of all substantial rights in the patent.

26   *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (citing 35 U.S.C. § 100(d)).

27   PersonalWeb and Level 3 are parties to this action and together, they own 100% of the rights to the

28   asserted patents.  Amazon cites no authority for the proposition that standing is lacking where *all*

United States District Court
Northern District of California

1    owners of the asserted patents, who collectively own all the rights to those patents, are parties to an
2    infringement action, as is the case here.

3        When courts consider standing issues in patent cases, they aim to protect (1) "alleged
4    infringer from facing multiple lawsuits on the same patent" and (2) "the patentee from losing
5    substantial rights if its patent claims are invalidated or the patent rendered unenforceable in an action
6    in which it did not participate." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343,
7    1350 (Fed. Cir. 2016).  Neither issue is present under the unique facts of this case.  First, even if
8    PersonalWeb's infringement claims against CloudFront are contrary to the terms of the Agreement,
9    Amazon will not be facing multiple lawsuits because Level 3, as a party to this action, is bound by
10   this Court's orders and judgment.  Second, Level 3 has always been a party in this case and has had
11   ample opportunity to participate in the proceedings and protect its rights.  Thus, it is irrelevant
12   whether Level 3 is "asserting patent infringement in this case," because Level 3—as a party—is just
13   as bound by the judgment of this Court as it would have been if it had alleged infringement on its
14   own behalf.

15       In sum, whether PersonalWeb's claims against CloudFront are in Level 3's Field of Use is
16   an issue between PersonalWeb and Level 3 and does not affect any of Amazon's substantive rights.
17   Therefore, the Court need not interpret the Agreement to resolve Amazon's standing challenge.
18   Amazon's challenge to PersonalWeb's standing to bring infringement claims against CloudFront is
19   hereby DENIED.

20   **IV.   ORDER**

21       For the foregoing reasons:

22   (1) Amazon's Motion for Judgment on the Pleadings on Infringement Claims against
23       CloudFront for lack of standing at ECF 413 (and ECF 99 in the Amazon Case) is
24       DENIED.

25   (2) Amazon's Motion for Summary Judgment of Non-Infringement at ECF 541 (and ECF
26       155 in the Amazon Case) is GRANTED; Amazon's Motion for Summary Judgment on
27       the alternative ground that PersonalWeb lacks standing at ECF 541 is DENIED.

28   (3) Twitch's Motion for Summary Judgment of Non-Infringement at ECF 542 (and ECF 67

United States District Court
Northern District of California

in the Twitch Case) is GRANTED; Twitch's Motion to Exclude the Testimony of Erik de la Iglesia at ECF 542 (and ECF 67 in the Twitch Case) is DENIED as MOOT.

**IT IS SO ORDERED.**

Dated: February 3, 2020

_____
BETH LABSON FREEMAN
United States District Judge