J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
MELANIE L. MAYER (admitted *pro hac vice*)
mmayer@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
TJ FOX (CSB No. 322938)
tfox@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INERACTIVE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONAL WEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No.: 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., Plaintiffs v. PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, Defendants, | Case No.: 5:18-cv-00767-BLF |
| PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC, Plaintiffs, v. TWITCH INTERACTIVE, INC., Defendant. | Case No.: 5:18-cv-05619-BLF |

**MOTION OF AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC. FOR ATTORNEY FEES AND COSTS**

Date: June 4, 2020
Time: 9:00 a.m.
Dept: Courtroom 3, 5th Floor
Judge: Hon. Beth L. Freeman

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES ---------------------------------1

MEMORANDUM OF POINTS AND AUTHORITIES ---------------------------------------------1

I. INTRODUCTION ---------------------------------------------------------------------------------1

II. BACKGROUND-------------------------------------------------------------------------------------2

A. PersonalWeb filed 85 lawsuits with no viable infringement theory ------------------2

B. Each time its infringement theory failed, PersonalWeb changed its theory for the sole purpose of prolonging the case unreasonably with the hope of extracting settlements from the customer defendants --------------------3

C. PersonalWeb opposed summary judgment of claim and *Kessler* preclusion by submitting sham declarations -------------------------------------------5

D. After the Court's claim construction order foreclosed PersonalWeb's infringement claims, PersonalWeb directed its expert to apply a different construction to prolong the case unreasonably ------------------------------5

E. After PersonalWeb lost all claims on multiple grounds, it tried to unravel the MDL by claiming the Twitch case was no longer representative ----------------------------------------------------------------------------7

III. PERSONALWEB'S CONDUCT MAKES THIS CASE EXCEPTIONAL------------------8

A. PersonalWeb asserted baseless claims ------------------------------------------------8

B. The Court should find this case exceptional because PersonalWeb repeatedly changed positions--------------------------------------------------------- 10

C. The Court should find this case exceptional because PersonalWeb needlessly and unreasonably prolonged the case after the claim construction order foreclosed all infringement claims-------------------------------- 12

D. The Court should find this case exceptional because PersonalWeb failed to follow the Court's rules and was not candid with the Court -------------- 13

IV. THE COURT SHOULD AWARD AMAZON AND TWITCH THE ATTORNEY FEES AND COSTS THEY REASONABLY INCURRED IN THIS CASE -------------- 14

V. CONCLUSION------------------------------------------------------------------------------- 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**

***Cases:*** ***Page(s):***

*AdjustaCam, LLC v. Newegg, Inc.*,
861 F.3d 1353 (Fed. Cir. 2017) ---------------------------------------------------------- 10, 12

*Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*,
No. 8-cv-0235-WJM-STV, 2019 WL 4007772 (D. Colo. Aug. 23, 2019) ------------------ 10

*Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*,
No. 07 CIV. 6790 (CM), 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010) --------------------- 1

*Blum v. Stenson*,
465 U.S. 886 (1984) ---------------------------------------------------------------------------- 15

*Bovino v. Levenger Co.*,
No. 14-CV-00122-RM-KLM, 2016 WL 1597501 (D. Colo. Apr. 21, 2016) --------------- 14

*Bywaters v. United States*,
670 F.3d 1221 (Fed. Cir. 2012) ------------------------------------------------------------- 15

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
79 F. Supp. 3d 1111 (C.D. Cal. 2015) ------------------------------------------------------ 8

*DataTern, Inc. v. MicroStrategy Inc.*,
C.A. No. 11-11970-FDS, 2018 WL 2694458 (D. Mass. June 5, 2018) ---------------------- 12

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ----------------------------------------------------------------------------- 8

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*,
581 F. App'x 877 (Fed. Cir. 2014) ........................................................................... 14

*Intex Recreation Corp. v. Team Worldwide Corp.*,
77 F. Supp. 3d 212 (D.D.C. 2015)------------------------------------------------------------ 13

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
734 F. App'x 401 (9th Cir. 2018)------------------------------------------------------------- 13

*Kilopass Tech., Inc. v. v. Sidense Corp*,
82 F. Supp. 3d 1154 (N.D. Cal. 2015) ---------------------------------------------------- 14–15

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
No. C 13–159 CW, 2014 WL 4616847 (N.D. Cal. Sep. 15, 2014) ---------------------------- 9

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
811 F.3d 479 (Fed. Cir. 2016)--------------------------------------------------------- 8, 14–15


*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ---------- 1, 8

*Oplus Techs., Ltd. v. Vizio, Inc.*,
782 F.3d 1371 (Fed. Cir. 2015) ---------- 10

*Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*,
407 F. Supp. 2d 41 (D.D.C. 2005) ---------- 9

*Perdue v. Kenny A. ex. rel. Winn*,
559 U.S. 542 (2010) ---------- 14

*PersonalWeb Techs., LLC v. IBM Corp.*,
No. 6:12-cv-661 (E.D. Tex. Mar. 11, 2016) ---------- 9

*Phigenix, Inc. v. Genentech Inc.*,
No. 15-cv-01238-BLF, 2019 WL 2579260 (N.D. Cal. June 24, 2019) ---------- 15

*Rambus Inc. v. Infineon Techs. AG*,
318 F.3d 1081 (Fed. Cir. 2003) ---------- 14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012) ---------- 15

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
858 F.3d 1383 (Fed. Cir. 2017) ---------- 8, 15

*Source Search Techs., LLC v. Kayak Software Corp.*,
No. 11-3388(NLH/KMW), 2016 WL 1259961 (D.N.J. Mar. 31, 2016),
*aff'd*, 697 F. App'x 695 (Fed. Cir. 2017) ---------- 10

*Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
No. SACV 17-00660 JVS (JCGx), 2018 WL 6164300 (C.D. Cal. June 7, 2018) ---------- 13

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ---------- 12

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
No. 13cv651 JLS (MDD), 2017 WL 1235766 (S.D. Cal. Apr. 4, 2017) ---------- 10

*TNS Media Research LLC v. Tivo Research & Analytics, Inc.*,
No. 11-cv-4039 (KBF), 2018 WL 2277836 (S.D.N.Y. May 18, 2018) ---------- 12

***Statutes & Rules:***

35 U.S.C. § 285 ---------- 1-2, 8, 14

Civil L.R. 5-1(i)-(j) .......... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on June 4, 2020, at 9:00 a.m., at the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, in the courtroom of the Honorable Beth L. Freeman, Amazon.com, Inc., and Amazon Web Services, Inc. (collectively, "Amazon") and Twitch Interactive, Inc. ("Twitch") will and hereby do move the Court under 35 U.S.C. § 285, Rule 54 the Federal Rules of Civil Procedure, and Local Rules 54-1 through 54-5, for an order granting Amazon and Twitch their reasonable attorney fees and non-taxable costs.

Amazon and Twitch base their motion on this notice, the accompanying memorandum of points and authorities, the supporting declaration of Todd R. Gregorian, all pleadings and documents on file in this action, and such other materials or argument as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court should award Amazon and Twitch the significant attorney's fees and non-taxable expenses they incurred defending themselves and more than 80 other defendants from PersonalWeb's litigation abuse. Section 285 empowers the Court to grant this relief not merely to assist aggrieved litigants but to deter those who cavalierly "abuse[] the litigation process and needlessly consume the scarce time of the court." *Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*, No. 07 CIV. 6790 (CM), 2010 WL 1375176, at *9 (S.D.N.Y. Mar. 30, 2010). To do so, the Court must find only that this case "stands out from others"—either because the claims were weak or because it was litigated unreasonably. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Both forms of abuse occurred in this case. PersonalWeb never had a viable claim for relief. Eight years ago, PersonalWeb sued Amazon and Amazon's customer Dropbox in Texas, alleging that Amazon S3 infringed its patents. PersonalWeb had no valid claim in that case: it had no choice but to dismiss its complaint with prejudice after claim construction. Four years after that case ended, PersonalWeb took another run at extracting settlements with its now expired patents in a

FENWICK & WEST LLP
ATTORNEYS AT LAW

massive nationwide litigation campaign against scores of Amazon customers, accusing their use of the same Amazon S3 service of infringing the same PersonalWeb patents. That alone should subject PersonalWeb to a substantial fee award.

But PersonalWeb's unreasonable conduct went much further. PersonalWeb's infringement theory was refuted by even a cursory review of the publicly available HTTP specification. And rather than concede the defects in its case once exposed, PersonalWeb bobbed and weaved—it repeatedly mischaracterized its infringement theories, submitted sham declarations, and substituted its own claim constructions for the Court's—all in the hope of ultimately coercing settlements from Amazon customers. This is a stand-out case by any measure.

Congress empowered the Court through § 285 to deter precisely this sort of litigation abuse. The Court may do so here by granting this motion.

## II.  BACKGROUND

### A.  PersonalWeb filed 85 lawsuits with no viable infringement theory.

PersonalWeb sued Amazon and its customer Dropbox eight years ago in the Eastern District of Texas, alleging infringement by Amazon S3, and lost. *PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011). PersonalWeb dismissed its claims with prejudice after it received the court's claim construction, and the court entered final judgment. (Dkts. 315-7; 315-8.)

Almost four years after the Texas case ended, PersonalWeb hired new counsel and implemented a new plan to extract settlements from a vast array of innocent companies whose only common "fault" was the use of Amazon S3 service to serve web content efficiently using the HTTP protocol, just like thousands of other companies and organizations. Starting in January 2018, PersonalWeb filed 85 lawsuits against different Amazon customers around the country, alleging that their use of the same Amazon S3 service infringed the same patents at issue in the Texas case. (*See* Dkt. 295.) These claims were plainly barred by the earlier judgment, as this Court ultimately ruled. (Dkts. 315, 394, 411.)

Not only were these suits barred, they were baseless. The patents claim a method of naming

FENWICK & WEST LLP
ATTORNEYS AT LAW

AMAZON AND TWITCH MOTION FOR ATTORNEY FEES

2

CASE NOS. 5:18-md-02834-BLF,
5:18-cv-00767-BLF, and
5:18-cv-05619-BLF

a computer file with a name created from the contents of the file and using that name to check whether a user has a license to access the file. But in these cases, PersonalWeb accused basic aspects of the HTTP protocol—the publicly available standard that governs how web browsers and web servers communicate—a technology that has *nothing* to do with checking for valid licenses or permitting access to content. (Dkt. 540-6 ("Weissman Report") ¶¶ 26, 94; *see* Dkt. 54 at 33:11-19.) As a result, PersonalWeb never had a basis to allege that any of the scores of defendants met the key elements of the asserted claims, including the requirements to determine whether content is unauthorized or unlicensed, and, if so, not permitting a user to access that content. (Weissman Report ¶ 84.) PersonalWeb publicly announced that it spent a year "studying" the alleged widespread infringement of the patents by the defendants before filing. (*See* Gregorian Decl. Ex. 12.) It chose to bring these baseless claims anyway.

### B. Each time its infringement theory failed, PersonalWeb changed its theory for the sole purpose of prolonging the case unreasonably with the hope of extracting settlements from the customer defendants.

Throughout this multi-year litigation, PersonalWeb repeatedly flip-flopped positions, telling the court whatever was expedient to keep its cases alive at that moment. PersonalWeb sought to centralize all the customer cases in an MDL. (*See* Gregorian Decl. Exs. 13, 15 (*In re PersonalWeb Techs., LLC & Level 3 Commc'ns, LLC Patent Litig.*, MDL No. 2834 ("MDL Action"), Dkts. 1-1, 133).) To win centralization, PersonalWeb told the JPML that all its infringement claims were based on the customer defendants' use of Amazon S3:

> Each defendant is alleged to have contracted with the same third party to serve its content on its behalf using the same S3 host system so that it may control its content distribution in an infringement of the Patents-in-Suit.

(*Id.*, Dkt. 1-1 at 7; *see also id.* at 6 ("Once each defendant's webpage files have been compiled . . . each defendant is alleged to upload them to an Amazon S3 host system as objects . . . ."), 8-9.

PersonalWeb quickly abandoned this core position to try to avoid Amazon's declaratory judgment suit and Amazon's motion to enjoin PersonalWeb from proceeding against Amazon's customers. PersonalWeb told *this* Court that its claims were really focused on Ruby on Rails, not

Amazon S3.  (*Amazon.com, Inc. v. Personal Web Techs., LLC*, No. 5:18-cv-00767-BLF ("DJ Action"), Dkt. 37 at 1; *id.*, Dkt. 54 at 44:1-2 ("PersonalWeb's theory of infringement revolves around Ruby on Rails not S3"); *see also* Gregorian Decl. Ex. 14 (MDL Action, May 31, 2018 Hearing Transcript, Dkt. 136) at 3:23-25.) PersonalWeb's surprise pivot would then mature into a full blown 180-degree reversal when it filed its motion to dismiss Amazon's declaratory judgment complaint and argued that the Court lacked subject matter jurisdiction because there was *no dispute* about infringement by Amazon S3.  (DJ Action, Dkt. 43.)

Unsurprisingly, this reversal did not escape the attention of the Court.  (*See* Dkt. 54 at 10:10-11 ("And I am not satisfied that you have adequately alleged the role that Ruby on Rails plays, or that you even can . . . ."); 11:6-8 ("But you barely mention Ruby on Rails. You don't map it on to the claimed elements at all.  It's not even clear that it maps on to all of the claims that you've asserted.").)  And yet the Court was accommodating, suggesting that it would stay the customer cases pending the resolution of the subject matter jurisdiction dispute raised by PersonalWeb's motion to dismiss.  (*Id.* 25:13-20.)

But rather than press its new position, PersonalWeb flip-flopped back, withdrawing its baseless motion (DJ Action, Dkt. 59) and re-asserting its S3 infringement theory with three new purported variants.  To try to keep the customer cases in play, PersonalWeb announced that it was really accusing four different categories of "website operator activity," including Amazon S3.  (*See* Dkt. 96, Joint Case Management Statement at 5:19-25; *see also* Dkt. 121 at 25:22-25; 60:25-61:6.)  These "different" theories all collapsed into the same nonsense HTTP theory, which the Court rightly and completely rejected at summary judgment. On September 26, 2018, the Court ordered the customer cases stayed while Amazon's DJ Action proceeded.  (Dkt. 157; Dkt. 300 at 28:18-29:11.)  The Court designated the Twitch case as representative of the customer cases and allowed it to proceed as well, based on PersonalWeb's express representation that the Twitch case included all four of its infringement theories.  (Dkt. 313; *see also* Dkt. 96 at 5-6; Dkt. 96-1 (Appendix A); Dkt. 303.)

Knowing that its infringement claims against Amazon S3 were barred by the final judgment in its first suit against Amazon, PersonalWeb concocted a new claim against CloudFront, Amazon's

content delivery network. PersonalWeb served infringement contentions that accused CloudFront and vaguely described uses of CloudFront "in combination" with Amazon S3. (*See* Dkt. 315-13.) None of PersonalWeb's pleadings, original or amended, had mentioned, much less asserted any claims against, CloudFront.

### C. PersonalWeb opposed summary judgment of claim and *Kessler* preclusion by submitting sham declarations.

Amazon moved for summary judgment that PersonalWeb's claims against S3 were barred by PersonalWeb's prior litigation against Amazon in Texas. (Dkt. 315.) To avoid summary judgment, PersonalWeb submitted sham declarations of its counsel Lawrence Hadley and its Chairman Kevin Bermeister that attempted to manufacture a dispute. Mr. Hadley testified that the parties to the Texas case all "recognized" that PersonalWeb retained the right to assert infringement claims involving S3 in the future, notwithstanding that the dismissal filed with the Texas court said the opposite. And both witnesses tried to testify, contrary to the pleadings and other records from the Texas case, that PersonalWeb had not accused Amazon S3 of infringement but rather only the multipart upload *feature* within S3. (Hadley Decl. & Bermeister Decl., Dkts. 335, 337.) Naturally, the Court found no triable issue and was "troubled" by Mr. Hadley's "uncorroborated and self-serving" declaration. (Dkt 394 at 18:12-13; *see also* Dkt. 376 at 53:19-22 ("Mr. Hadley's declaration is troubling to me because I actually think it's contrary to the evidence from his own case.").)

On March 13, 2019, this Court granted Amazon's motion as to all claims based on the use or operation of any feature of S3. (Dkt. 394.) The Court then dismissed with prejudice eight customer cases which alleged infringement based on S3 only. (Dkt. 411.)

### D. After the Court's claim construction order foreclosed PersonalWeb's infringement claims, PersonalWeb directed its expert to apply a different construction to prolong the case unreasonably.

On May 24, 2019, the Court conducted the claim construction hearing. (*See* Dkt. 437.) Faced with the possibility of unfavorable rulings, PersonalWeb sought once again to change its infringement theories—this time by a motion to amend its infringement contentions. (*See* Dkt. 448.) The Magistrate Judge denied the motion. (Dkt. 481.) The proposed amendment raised issues

that PersonalWeb had litigated in its past cases but simply failed to address in its infringement contentions until it thought it was likely to lose. (Dkt. 476 at 2:23-25; 12:16-18.) When pressed on this by the Court, PersonalWeb actually argued that it would be somehow "unreasonable" to expect a party to be aware of its own past litigation where it had sued so many defendants on the same patents. (*See id.* at 5:3-7; 12:12-13:19.) The Court disagreed with this cavalier view and found instead that PersonalWeb had a "heightened" responsibility to consider past cases, and that PersonalWeb's failure to do so showed a lack of diligence. (Dkt. 481 at 9-11.)

On August 16, 2019, the Court issued its claim construction order. (Dkt. 485.) The Court construed the claim term "unauthorized or unlicensed" as "not compliant with a valid license" and the claim term "authorization" as "a valid license." (Dkt. 485 at 12, 33.) Later that day, counsel for Amazon and Twitch sent PersonalWeb's counsel a letter informing them that PersonalWeb no longer had viable claims and that any continued litigation lacked a Rule 11 basis and was subject to sanctions. (*See* Dkt. 507-2.) In response, PersonalWeb offered to dismiss only one of the five asserted patents. (Dkt. 507-3.)

PersonalWeb then directed its expert, Mr. Erik de la Iglesia, to substitute PersonalWeb's preferred constructions for the Court's. (*See* Dkt. 543-1.) Instead of the Court's construction "compliant with a valid license," Mr. de La Iglesia's expert report used "compliant with valid rights to content." Instead of the Court's construction "a valid license," he used "valid rights to content." (*Id.* ¶ 64.) Based on these new constructions, Mr. de la Iglesia concluded that the Twitch website infringes because, using the HTTP protocol, Twitch's website checks whether the user has the *current* version of a file in her browser cache, which he deemed to be *analogous* to checking a license. (*Id.* ¶ 103.)

Knowing it had violated the claim construction order, PersonalWeb then moved to "clarify" it, asking the Court to replace its constructions with the ones PersonalWeb's expert had applied. (*See* Dkt. 507 at 2.) At the hearing, the Court admonished PersonalWeb for once again raising new issues that could and should have been vetted before even filing these cases:

> You didn't raise this. It can't come as a surprise to you that by, in this binary choice that I had of your plain and ordinary meaning or Amazon's proposal, that when you

> lost that, that you would need something more. You've utterly—I mean, I just don't even know what you're talking about. I don't see anything to clarify because I chose a term that you never suggested was unclear. . . . And I don't know of any authority for the court to construe a term in its own construction. I've never heard of that before.

(Dkt. 519 at 12:16-13:4; *see also id.* 6:18-24; 10:9-25; 12:7-14:11; 16:11-14.)

The Court denied the motion on October 1, 2019. (Dkt. 537.) The next day, PersonalWeb requested entry of partial judgment of non-infringement under the Court's claim construction. (Dkt. 538.) But this was another bad faith gambit that Amazon would not accept and that the Court saw through. PersonalWeb proposed a judgment that would secure advantages for itself while creating disorder in the MDL. Specifically, PersonalWeb wanted the Court to enter judgment on only a single claim construction and only in the Amazon case, to avoid losing on the additional grounds raised in Amazon's summary judgment motion. (*Id.* at 3-4; Dkt. 541.) PersonalWeb also asked the Court to dismiss the '791 patent *without* prejudice, leaving it free to reassert that patent in a new lawsuit. (Dkt. 538 at 1.) The Court denied PersonalWeb's motion. (Dkt. 559.) It held that there was no "valid reason to deprive Amazon of a ruling on its summary judgment motion" and that "decoupling" the Amazon and Twitch cases would be "contrary to the efficiencies desired by the parties and the Court throughout this MDL." (*Id.* at 3.)

**E. After PersonalWeb lost all claims on multiple grounds, it tried to unravel the MDL by claiming the Twitch case was no longer representative.**

On October 4, 2019, Amazon and Twitch moved for summary judgment of non-infringement for all asserted patents. (Dkts. 541, 542.) PersonalWeb's opposition included a declaration from its expert with new opinions that it had not disclosed in his report. (Dkt. 551-1; *see also* Dkt 562 at 7.)

The Court struck PersonalWeb's untimely expert declaration and granted summary judgment for Amazon and Twitch on all claims on multiple independent grounds: (1) there is no determination of compliance with a valid license ('310 and '420 patents); (2) there is no "permitting content to be provided or accessed" ('442, '310 and '420 patents); (3) there is no "determining whether a copy of the data file is present using the name" ('442 patent); and (4) there is no "comparison to a plurality of identifiers" ('420 patent). (Dkt. 578; *see also* Dkt. 573 at 51:13-22;

83:10-14; 91:8-10.) PersonalWeb had already totally abandoned (but not dismissed) its claims for infringement of the ’544 and ’791 patents by failing to include them in its expert report, and so the Court awarded summary judgment on these as well. (Dkt. 578 at 11-12.)

After all this, PersonalWeb still asked for a do-over. PersonalWeb induced the Court to structure the entire MDL on the premise that “a verdict against PersonalWeb that no infringement was found” in the Twitch case would mean that “none of the customer cases could go forward.” (*See* Dkt. 300 at 8:17-18; 6:17-22.) As soon as it lost, PersonalWeb reneged. It claimed that the Twitch case was no longer representative of the customer cases, and that PersonalWeb should be permitted to pursue some of those cases separately in the event of a remand following appeal. (Dkt. 584 at 4-6, 8.)

## III. PERSONALWEB’S CONDUCT MAKES THIS CASE EXCEPTIONAL

The Patent Act provides that the court in exceptional cases may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. An exceptional case is simply one that “stands out from others with respect to the substantive strength of a party’s litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.” *Octane Fitness*, 572 U.S. at 554. Factors relevant to this inquiry include “frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.” *Id*. n.6 (adopting factors considered in Copyright Act fee awards from *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). In sum, “Section 285 discourages certain ‘exceptional’ conduct by imposing the cost of bad decisions on the decision maker.” *Cambrian Sci. Corp. v. Cox Commc’ns, Inc.*, 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015).

### A. PersonalWeb asserted baseless claims.

A case is exceptional where plaintiff had no viable claim from the beginning, *i.e.*, the “suit never should have been filed.” *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1391 (Fed. Cir. 2017) (J. Mayer concurring); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (affirming district court’s

finding that the case was exceptional because the "allegations of infringement were ill-supported . . . and thus the lawsuit appears to have been baseless"). Here, PersonalWeb brought 85 separate lawsuits, and every one of them was meritless from the start.

First, PersonalWeb sued Amazon and its customer Dropbox on the same claims years ago and lost. (*See* Dkt. 315 at 3.) As this Court found, PersonalWeb's new lawsuits attempted to re-assert barred claims. (Dkt. 394.) The complaints as filed were therefore baseless and PersonalWeb's pursuit of those barred claims was objectively unreasonable. *See Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*, 407 F. Supp. 2d 41, 45-46 (D.D.C. 2005) (awarding attorney fees under Copyright Act when plaintiff brought claim barred by collateral estoppel). PersonalWeb's post-hoc mischaracterization of its complaints as directed to Ruby on Rails—and its still *later* attempts to add new theories and products like Amazon CloudFront to the case—does not change this fact.

Second, PersonalWeb asserted baseless infringement theories. PersonalWeb knew that the accused HTTP standard did not meet the plain requirements of the claims because it does not determine license compliance or "not permit" content to be provided or accessed. (*See, e.g.*, Dkt. 485 at 9:18-23.) Not only is the HTTP specification a public document freely available for anyone to review (Dkt. 543-3), but Judge Gilstrap had years ago construed the claims in a way that made clear that none of the technology accused here infringed. (*See* Weissman Report ¶ 24; Dkt. 452 at 2-3; Dkt. 452-2 at 25-28 (*PersonalWeb Techs., LLC v. IBM Corp.*, No. 6:12-cv-661 (E.D. Tex. Mar. 11, 2016))); *cf. Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13–159 CW, 2014 WL 4616847, *3-5 (N.D. Cal. Sep. 15, 2014) (where other courts had previously construed the disputed claim terms in manner foreclosing infringement, the plaintiff "was not free to pursue another case targeting the same technology with impunity"). PersonalWeb filed 85 suits even though publicly available documents and its own past cases made clear that it was asserting baseless claims.

The summary judgment order, too, makes clear that PersonalWeb brought baseless claims. PersonalWeb abandoned two asserted patents during expert discovery—it directed its expert not to opine on their alleged infringement. (Dkt. 578 at 11-12.) The Court ruled that each of the remaining three patents was not infringed on multiple distinct grounds, granting Amazon and Twitch's motions as to *every specific non-infringement argument raised*. (*Id.* at 13-27.) A reasonable

FENWICK & WEST LLP
ATTORNEYS AT LAW

AMAZON AND TWITCH MOTION FOR ATTORNEY FEES

9

CASE NOS. 5:18-md-02834-BLF, 5:18-cv-00767-BLF, and 5:18-cv-05619-BLF

investigation of the accused HTTP standard should have made it obvious to PersonalWeb that its claims were meritless.[1]

PersonalWeb was even more unreasonable in the way in which it pursued its claims. It sued scores of disparate companies in a sprawling MDL over technology—like Amazon S3—that those defendants did not create or supply. It accused basic HTTP operations and misinterpreted its patents purportedly to cover the entire world wide web. (Dkt. 573 at 51:13-24; 52:19-20 ("So you are going to go after every website in the universe?").) This conduct "strongly suggests Plaintiffs brought suit against many defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements." *See ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13cv651 JLS (MDD), 2017 WL 1235766, at *6-7, (S.D. Cal. Apr. 4, 2017) (awarding fees); *see also AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361-62 (Fed. Cir. 2017). Indeed, Congress and the Federal Trade Commission have expressly identified customer suits like PersonalWeb's campaign here as one of "the abusive practices of patent assertion entities (PAEs) that are a drag on innovation, competition, and our economy." (DJ Action, Dkt. 15-10 at E-2.) The Court may find the case exceptional and award fees on this ground alone.

**B. The Court should find this case exceptional because PersonalWeb repeatedly changed positions.**

A party that repeatedly changes its litigation positions throughout the case engages in exceptional conduct. Variously called the "Whack-a-Mole," "flip-flop," "shifting sands," or "say anything" strategy, courts are clear that this is misconduct that warrants a fee award. *See Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1373 (Fed. Cir. 2015) (vacating district court's denial of fees where the plaintiff's "malleable expert testimony and infringement contentions" caused "a frustrating game of Whack–A–Mole throughout the litigation"); *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388(NLH/KMW), 2016 WL 1259961, at *7 (D.N.J. Mar. 31, 2016) (granting fees where the plaintiff "flip flopped" its positions to "suit the argument of the day"), *aff'd*, 697 F. App'x 695 (Fed. Cir. 2017); *Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*, No. 8-cv-

[1] Claims in three of the asserted patents—Nos. 5,978,791 (claims 1-4, 29-33, and 41), 7,802,310 (claim 70), and 7,945,544 (claim 1)—were also invalidated years before PersonalWeb filed. Gregorian Decl. ¶ 23 & Exs. 9-11; *see also id.* ¶ 24.

0235-WJM-STV, 2019 WL 4007772, at *6-12 (D. Colo. Aug. 23, 2019) (finding case exceptional where the plaintiff's "convenient position-shifting" was "evidence [of] its willingness to say whatever is needed to obtain the outcome it seeks"), *appeal docketed*, No. 2020-1355 (Fed. Cir. Jan. 15, 2020).

PersonalWeb's constantly changing litigating positions defined this case. PersonalWeb filed suit against Amazon customers alleging they infringed by using Amazon S3, and it convinced the JPML to centralize the cases on that basis. (*See* DJ Action, Dkt. 62, ¶¶ 44-78 at 19-28; Gregorian Decl. Ex. 13 (MDL No. 2834, Dkt. 1-1).) But faced with a potential injunction, PersonalWeb mischaracterized its complaints. It argued to this Court that its lawsuits accused Ruby on Rails, and it filed a motion to dismiss that argued it *had not accused Amazon S3* of infringement. (*See* DJ Action, Dkt. 37 at 1; *id.*, Dkt. 54 at 43:24-44:2; *id.*, Dkt. 43.)

PersonalWeb abandoned this position once the Court questioned it. (*See* Dkt. 54 at 10:10-13, 25; 11:1-2.) It withdrew the frivolous motion to dismiss before the Court could hear it, and it counterclaimed against Amazon for infringement by S3. (DJ Action, Dkts. 59, 71 at ¶¶ 22, 24.) At the same time, PersonalWeb changed its position again with respect to the customers, arguing it now had *four different* infringement theories and that therefore the Court should allow multiple customer cases to proceed. (Dkt. 96 at 5:19-25.) And to avoid a judgment of claim preclusion, PersonalWeb served infringement contentions that accused Amazon CloudFront, a product not accused in any of the pleadings. (Dkt. 448-2.)

PersonalWeb repeated this behavior during claim construction. It tried to change its infringement theories yet again after a poor showing at the *Markman* hearing. (Dkt. 481.) And after claim construction, PersonalWeb asked the Court to "clarify" the meaning of "unlicensed" by adopting the claim construction its expert had applied instead of the Court's. (Dkt. 537.) The Court found that PersonalWeb understood and has never been confused about the term. (*Id.* at 7.)

Finally, PersonalWeb agreed to use the Twitch case as representative for the MDL. It repeatedly stated that its infringement theories for the other cases were the same as the Twitch case and that a judgment in the Twitch case would resolve all customer cases. (*See* Dkt. 96 at 5-6; Dkt. 96-1 (Appendix A); Dkt. 271 at 5; Dkt. 300 at 8:17-18; 6:17-22; Dkt. 313.) But after it lost on

FENWICK & WEST LLP
ATTORNEYS AT LAW

AMAZON AND TWITCH MOTION FOR
ATTORNEY FEES

11

CASE NOS. 5:18-md-02834-BLF,
5:18-cv-00767-BLF, and
5:18-cv-05619-BLF

summary judgment, PersonalWeb suddenly claimed the Twitch case was not representative. (*See* Dkt. 584 at 4-6.) Presumably had there been a verdict of infringement PersonalWeb would never have suggested that Twitch was not a proper representative case.

Litigating against a party that will say anything is expensive. *See, e.g.*, *TNS Media Research LLC v. Tivo Research & Analytics, Inc.*, No. 11-cv-4039 (KBF), 2018 WL 2277836, at *4-6 (S.D.N.Y. May 18, 2018). Here, each of PersonalWeb's changes in position drove up costs, as Amazon and Twitch had to respond to each new baseless motion, infringement theory, claim construction, or other contention. The Court itself has repeatedly expressed its own well-founded concerns about PersonalWeb's inconsistent representations. (*See, e.g.*, Dkt. 121 at 25:22-25 ("[Y]ou're fundamentally changing your theories . . . ."); 60:25-61:6 ("I continue to have great concern that the way you are proposing to litigate these cases is not the way you pitched it earlier.").) It should find the case exceptional and award fees on this ground.

### C. The Court should find this case exceptional because PersonalWeb needlessly and unreasonably prolonged the case after the claim construction order foreclosed all infringement claims.

A case is exceptional also when the patentee continues to litigate after claim construction ends any reasonable chance of prevailing on the merits. *AdjustaCam*, 861 F.3d at 1360-61 (finding case exceptional because while plaintiff "may have filed a weak infringement lawsuit . . . [its] suit became baseless after the district court's *Markman* order"); *see also DataTern, Inc. v. MicroStrategy Inc.*, C.A. No. 11-11970-FDS, 2018 WL 2694458, at *15 (D. Mass. June 5, 2018) (awarding fees because "plaintiff's case appears to have become unreasonable following the Court's construction of 'class'"). A party must therefore "continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).

PersonalWeb failed to meet this basic obligation. It refused to dismiss its claims after the Court's claim constructions foreclosed any possibility that PersonalWeb could prevail on infringement. (*See* Dkt. 485; Dkt. 507-2.) Instead, PersonalWeb had its technical expert violate the order and apply his own constructions. PersonalWeb then moved "for clarification" in the hope

the Court would somehow reconsider and adopt the expert's constructions. (Dkt. 507.) The Court described the motion as "completely inappropriate" and denied it. (Dkt. 519 at 6:18-24; *see also id*. 12:25-13:1; Dkt. 537.) It was only at that point—having already forced Amazon and Twitch to incur the expense of expert discovery and summary judgment motions—that PersonalWeb attempted to secure a partial judgment to allow it to appeal the claim construction. (Dkt. 538.) But even this was an attempt to prolong the case: PersonalWeb moved in the Amazon case only, not the Twitch case; it asked the Court *not to rule* on Amazon's summary judgment motion, so it would not lose on additional grounds; and it asked the Court to dismiss the '791 patent *without prejudice* so PersonalWeb could start over and assert it in a brand-new lawsuit. (*See id*. & Dkt. 547.)

*Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212 (D.D.C. 2015) is instructive. There, the court's claim construction order had "foreclosed any reasonable argument" that the accused product infringed. *Id.* at 217. The plaintiff refused to stipulate to non-infringement, and instead submitted a "conclusory expert report" with "flawed, nonsensical, and baseless arguments" that sought to "re-litigate" the court's construction. *Id.* The court awarded fees. *Id.*; *see also Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS (JCGx), 2018 WL 6164300, at *4-6 (C.D. Cal. June 7, 2018) (distinguishing between a request to reconsider claim construction and an attempt to support infringement analysis with a rejected construction, and finding the latter unreasonable). PersonalWeb's correct course was to stipulate to non-infringement after claim construction when it received Amazon's Rule 11 letter and appeal. (Dkt. 507-2.) Instead, PersonalWeb litigated baseless claims to summary judgment and then at the last minute sought to stipulate to avoid losing on additional grounds. This is exceptional.

### D. The Court should find this case exceptional because PersonalWeb failed to follow the Court's rules and was not candid with the Court.

While the Court could rest an exceptional case finding on just the grounds discussed above, PersonalWeb engaged in other unreasonable conduct that supports an award. Violations of court rules and the duty of candor, for example, are both grounds to find a case exceptional. *See Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 409 (9th Cir. 2018) (affirming fee award in Lanham Act case where the plaintiff had violated court rules); *Bovino v. Levenger Co*., No. 14-CV-

00122-RM-KLM, 2016 WL 1597501 (D. Colo. Apr. 21, 2016) (granting fees based in part on violation of duty of candor). Here, PersonalWeb did both when it represented positions to the Court on behalf of its co-plaintiff Level 3 without Level 3's consent. (*See* Dkt. 366 at 1-2; *see also* Gregorian Decl. Ex. ¶¶ 28-29); Local Rule 5-1(i)-(j) (failure to comply with signature attestation requirement is sanctionable). Moreover, PersonalWeb was not candid with the Court when this was discovered. PersonalWeb filed an "errata" stating only that it had "erroneously" included Level 3's signature on one document, when for months PersonalWeb had filed under Level 3's signature without authorization. (Dkt. 364; Dkt. 366 at 1-2; Gregorian Decl., ¶¶ 28-29.) The record is replete with other instances in which PersonalWeb was less than fully candid with the Court, including—as discussed above—its mischaracterization of the MDL as focused on Ruby on Rails, its sham Hadley declaration that mischaracterized the Texas case against Amazon, and its surprise announcement after it lost that it no longer considered the Twitch case representative of the customer cases in the MDL.

This unreasonable conduct compounded the difficulty and expense Amazon and Twitch faced in resolving the case and is a further basis to award fees.

## IV. THE COURT SHOULD AWARD AMAZON AND TWITCH THE ATTORNEY FEES AND COSTS THEY REASONABLY INCURRED IN THIS CASE

The district court has discretion to set the amount of a Section 285 fee award. *Lumen*, 811 F.3d at 483; *see also Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 558 (2010). Where a court finds a case exceptional based on specific litigation misconduct, the amount of the award must relate to the misconduct. *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003). But a court may award full fees where it finds the case exceptional based on the totality of the circumstances. *See Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (citing *Octane*, 134 S. Ct. at 1756). Indeed, "[t]here is nothing in the legislative history or applicable case law to suggest that . . . courts should balk at awarding full fees." *Kilopass Tech., Inc. v. v. Sidense Corp*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015).

The Court should award Amazon and Twitch their full fees here. Congress had two objectives in enacting Section 285: (1) to deter frivolous or unnecessary patent litigation, and (2)

to compensate parties injured by such litigation. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372-73 (Fed. Cir. 2012). Awarding the full amount of Amazon's and Twitch's attorney fees would satisfy both purposes. PersonalWeb is a recidivist-patent abuser with a long history of making big bets on weak cases. (*See* Gregorian Decl. Ex. 7); *Rothschild Connected Devices*, 858 F.3d at 1389-90 (vacating holding that case was not exceptional because district court failed to consider plaintiff's other vexatious lawsuits). Its conduct in this case is *exactly* the type that the federal courts should deter. PersonalWeb should also compensate Amazon and Twitch for the injury caused by the baseless and ever-evolving claims asserted in this MDL. *Kilopass*, 82 F. Supp. 3d at 1165-66; *Raylon*, 700 F.3d at 1372-73.

"In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen*, 811 F.3d at 483 (citing *Perdue*, 559 U.S. at 551-52, 554).

*Fenwick's rates were reasonable.* Reasonable hourly rates for determining the lodestar figure are the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012). Fenwick's rates in this case are in line with the prevailing rates in the Northern District of California for similar work. (*See* Gregorian Decl. ¶¶ 5-7.) Numerous California federal courts have approved Fenwick's rates as reasonable. (*See* Gregorian Decl. ¶ 7.) Survey evidence, including the AIPLA economic survey on which the federal courts routinely rely, also establishes Fenwick's rates as reasonable. (*Id.*); *Phigenix, Inc. v. Genentech Inc.*, No. 15-cv-01238-BLF, 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) (federal courts routinely rely on AIPLA economic survey).

*The fees incurred were reasonable*. Amazon's and Twitch's requested attorney fees from January 8, 2018 through February 29, 2020 total $6,100,000.00, and their requested non-taxable expenses total $323,668.06. These fees are reasonable given the scope of this MDL involving over eighty defendants centralized from six different judicial districts, five asserted patents, extensive motion practice, patent-specific contentions and claim construction briefing, and extensive fact and expert discovery. (Gregorian Decl. ¶¶ 9-10, Ex. 6). Amazon achieved significant savings by having

Fenwick & West serve as the primary counsel of indemnified customers. Had it not done so, the customers' defense, particularly in the early stages of the case, would have entailed a massive and unwieldy joint defense group. To ensure reasonableness, Amazon and Twitch have also excluded certain fees from their request, including fees of local counsel that Amazon paid on behalf of its customers before centralization, and fees for work performed by attorneys and staff who served minor roles on the case. (Gregorian Decl. ¶¶ 15-17.)

The charts required by the Court's standing order on attorney's fee motions appear at ¶ 4 and Exhibit 6 of the Gregorian declaration.

**V. CONCLUSION**

For the foregoing reasons, Amazon and Twitch respectfully request that the Court grant the motion and award them the full amount of attorney fees and non-taxable costs that they incurred in defending this exceptional case.

Respectfully submitted,

Dated: March 20, 2020

FENWICK & WEST LLP

By: */s/J. David Hadden*
J. DAVID HADDEN (CSB No. 176148)

Attorneys for AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and TWITCH INTERACTIVE, INC.