J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
SAINA S. SHAMILOV (CSB No. 215636)
sshamilov@fenwick.com
MELANIE L. MAYER (admitted *pro hac vice*)
mmayer@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
RAVI R. RANGANATH (CSB No. 272981)
rranganath@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
T.J. FOX (CSB 322938)
tfox@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:   650.988.8500
Facsimile:   650.938.5200

Counsel for AMAZON.COM, INC.,
AMAZON WEB SERVICES INC., and
TWITCH INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION, | Case No.: 5:18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC., <br><br> Plaintiffs, <br> v. <br> PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Defendants. | Case No.: 5:18-cv-00767-BLF <br><br> Case No. 5:18-cv-05619-BLF <br><br> **SUPPLEMENTAL DECLARATION OF TODD R. GREGORIAN IN SUPPORT OF AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND TWITCH INTERACTIVE, INC.'S MOTION FOR ATTORNEY FEES AND COSTS** |
| PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC, <br><br> Plaintiffs, <br> v. <br> TWITCH INTERACTIVE, INC., <br><br> Defendant. | |

I, Todd R. Gregorian, declare as follows:

1. I am counsel to Amazon.com, Inc., Amazon Web Services, Inc. (collectively, "Amazon"), and Twitch Interactive, Inc. ("Twitch") in this matter. I submit this declaration in response to PersonalWeb's submission arguing the reasonableness of the fee request. I have personal knowledge of the facts set forth herein.

2. I have reviewed PersonalWeb's brief and the declaration of Gerald Knapton. They base proposed reductions to the fee award on several incorrect assumptions about Amazon and Twitch's staffing and invoices. I discuss these in greater detail below.

**Staffing**

3. Our opening papers established that Fenwick staffed the case reasonably for the work required. PersonalWeb asserts that Fenwick staffed the case in a "top heavy" manner, but does so based on incorrect calculations. For example, PersonalWeb included most of my hours on the case in its "partner" category, even though I was not elevated to the partnership until January 1, 2020. *See* Dkt. 644-1 ("Knapton Decl.") ¶¶ 35, 39, 50, 52 (referencing four partners), *id.* Ex. 3; Dkt. 592-1 ("Gregorian Decl.") ¶ 4. This mistake caused PersonalWeb to overstate partner fees on the case by 880 hours. *See* Knapton ¶¶ 29, 34, Ex. 2 (calculating partner hours by incorporating 880 associate hours); *id.* ¶¶ 35, 39, 50, 52 (incorrectly referencing four partners in discussing proposed reductions for staffing). Partner hours for the case made up just 27.9% of timekeeper hours. Gregorian Decl. ¶ 15.

4. PersonalWeb states that Fenwick staffed the case with over 40 timekeepers and suggests that this added to "conference and training time." *See* Knapton Decl. ¶¶ 28, 39. But as previously explained, Amazon and Twitch excluded 29 of these timekeepers from the request. Gregorian Decl. ¶ 17. (Mr. Knapton notes (at ¶ 10 & n.1) that he could only find 27 of these; the other two are Kathleen Murray (paralegal) and Eugene Prokopenko (associate).) The work contributed by all these individuals was necessary to the case given its complex nature and the need to occasionally staff up to address the workload during busy periods. But it was precisely the concern that Mr. Knapton identifies—*i.e.*, the potential time required to orient extra timekeepers to the matter—that caused us to simply exclude *all* this time from the request rather than attempt an

FENWICK & WEST LLP
ATTORNEYS AT LAW

allocation. Gregorian Decl. ¶ 17. In other words, we excluded some time that had obvious value to the case in order to streamline the issues for the fee motion and to ensure the reasonableness of the request. Moreover, except for Ms. Murray and Mr. Prokopenko, who Mr. Hadden excluded from the invoices as well because they each billed fewer than 5 hours to the case, these exclusions were not done at the behest of the client at the invoicing stage, as Mr. Knapton claims.

5. Mr. Knapton also accuses us of double counting this deduction or using it to manipulate effective rates. Knapton Decl. ¶¶ 10, 20. That is incorrect. The work of these 29 timekeepers was subtracted out *before* reaching the approximately $6.9 million number, to which we then applied the nearly 13% final discount. Gregorian Decl. ¶ 19. Mr. Knapton's accusations are odd given that they conflict with his own report of this discount sequence in Knapton Exhibit 8.

6. Mr. Knapton also relies heavily on AIPLA survey data to support his claim that the case was overstaffed. Knapton ¶¶ 22-28. The AIPLA survey reports the average costs to defend a single NPE patent infringement case, which numbers Mr. Knapton then compares to the cost to defend the more than 80 patent infringement suits coordinated in this MDL. The comparison is inapt given the complexity of this proceeding. Moreover, the average costs of non-NPE patent infringement cases in the survey greatly exceed those of NPE patent litigation, in some instances by over a million dollars. *See e.g.* Knapton Ex. 5 at 4 (table I-145), 6 (table I-163). Mr. Knapton's use of NPE cases as the relevant benchmark is unusual because, to the best of my recollection, in this case PersonalWeb has not previously characterized itself as an NPE.

### Fact Discovery

7. The Fact Discovery category includes fees for document collection, review, and production for Amazon and Twitch, respectively, document review for PersonalWeb, and preparing for and attending sixteen depositions. Ms. Melanie Mayer was the supervising partner for fact discovery matters.

8. Mr. Knapton's portrayal of the parties' respective deposition staffing is inaccurate (*see* Knapton Ex. 7):

      a. In reporting the total number of "Fenwick Attorneys" who attended depositions, Mr. Knapton counts summer associates and client representatives whose time was not included in the fee request. *See* Knapton Ex. 7 (listing as "Fenwick Attorneys" Ryan Kwock and Jonathan Chai, former summer associates, and Eugene Marder, Twitch's Senior Product Counsel); *but see* Ex. 6 (acknowledging that Mr. Kwock and Mr. Chai were not included in the request for fees).

      b. Mr. Knapton claims that deposition attendance by junior associates (here, Crystal Nwaneri and TJ Fox) was "training time." That is incorrect. Ms. Nwaneri defended Mr. Keith Moore in his deposition, while Mr. Fox took the deposition of Mr. David Farber and defended Mr. James Richard in his two depositions. Mr. Fox supported Mr. Haack in the deposition of Mr. Matthew Baldwin. In short, Ms. Nwaneri and Mr. Fox billed for work that had value to the case and did not duplicate the work of other attorneys. It was not "training time."

9. While Mr. Knapton claims that Amazon and Twitch overstaffed depositions, he neglects to mention that PersonalWeb staffed the depositions in this case with *more* attorneys than Amazon and Twitch did. **Exhibit 17** is a list of the sixteen noticed depositions taken in this matter, including attorney attendees from both Fenwick and Stubbs Alderton, counsel for PersonalWeb.

10. In analyzing fees for Fact Discovery, Mr. Knapton also incorrectly refers to the standard partner rates before discounts were applied. *See* Knapton Decl. ¶ 52 (referencing billing rates as "Hadden-$1,120 per hour, Shamilov- $950 per hour, Mayer $900 per hour and then-associate, now partner Gregorian- $795 per hour"). The correct effective rates *post* discount are included in my original declaration. *See* Gregorian Declaration ¶ 5 (indicating that the 2018-2020 combined average effective rates were $905.95 for Mr. Hadden, $748.60 for Ms. Shamilov, and $699.82 for Ms. Mayer).

**Case Management and Conferences**

11. As discussed in my original declaration, this matter was complex and involved tasks that were more varied and involved than the typical patent litigation. Gregorian Decl. ¶ 22. To coordinate team efforts in the six judicial districts in which PersonalWeb filed customer lawsuits

FENWICK & WEST LLP
ATTORNEYS AT LAW

before consolidation, the proceedings before the JPML, the multidistrict litigation before this court, and the appeals before the Federal Circuit, the team held weekly team conferences to ensure consistent and efficient communication, which are much more reliable than one-off attorney and staff communications. The team conferences in this matter typically lasted about thirty minutes and rarely exceeded an hour. The team held conferences more frequently in the most active stages of the litigation that involved coordination among a higher number of people, including the phases before and immediately after consolidation, and during fact discovery. These conferences were reasonable and necessary. I understand that the Ninth Circuit has held that the amount spent by the losing party does not limit a prevailing party fee award or necessarily act as benchmark for determining reasonableness. *See, e.g.*, *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). That said, PersonalWeb did not provide any information about its own conference hours for its sizable team, which, given the deposition staffing comparison above, may reflect comparable conference time.

**Time Entries That Include More Than One Task**

12. Mr. Knapton accuses Fenwick of "block billing" time. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citations omitted). As the invoices reflect (Gregorian Decl. Ex. 4), time entries that cover more than one task often also include itemized amounts spent on each task. *See, e.g., id.* at 13 (time entry for Mr. Hadden dated February 6, 2018: "Drafted preliminary injunction motion (.8); call with counsel for customer defendants (.3).")." Such entries are not "block billed."

13. For entries that lack an itemized breakdown of time per task in the description, the descriptions are sufficiently robust for the Court to analyze the reasonableness of the fees for the work performed. As this Court has stated:

> While block-billing is less than ideal in providing a complete record to assess reasonableness, adequate descriptions can still make it acceptable. Such detailed

information about the timekeeper's activities can be sufficient for the purpose of evaluating whether the total block-billed hours were reasonable as a whole.

*Phigenix, Inc. v. Genentech Inc.*, 2019 WL 2579260, at *18 (N.D. Cal. 2019); *see also Oberfelder v. City of Petaluma*, 2002 WL 472308, at *3 (N.D. Cal. Jan. 29, 2002) ("The charge of blocked billing does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures.").

14. In addition, to ensure that each category of major tasks provided to the Court in Exhibit 6 of the Gregorian Declaration accurately reflected each attorney's hours and fees, the team reviewed these entries and allocated the time in each entry based on their good faith estimate of the time spent per task. **Exhibit 18** is a sample of time entries that include more than one task that were analyzed and allotted into separate tasks. The "Split" column indicates that entries requiring splitting have been apportioned into distinct categories (marked by "A"). The "Category" column lists the specific category of major tasks that correspond to the number of hours indicated in the "Allotment" column. At the Court's request, Amazon and Twitch can provide a copy of the full spreadsheet showing all such allocations.

### Exhibit 6 to the Gregorian Declaration

15. Mr. Knapton claims there are certain "discrepancies" in Exhibit 6 of the Gregorian Declaration. While I believe my original declaration was clear and his criticisms are misplaced, I offer the following clarifications.

16. First, Mr. Knapton claims that it was "misleading" and "improper[]" for Amazon to use the "Effective Rate Before Final Discount" to compile the fees incurred in each category required by the Court's standing order. Supp. Br. at 3; Knapton Decl. ¶¶ 9, 32. As explained in my original declaration, the fees requested were discounted in two stages. The first discount occurred at the time of billing and is reflected in the "Effective Rate Before Final Discount" column and the category totals. Our submission thus reflects the fees actually incurred by and billed to the client, which is what we understand the Court's standing order to require. Gregorian Dec. ¶¶ 5, 19; Ex. 6; Standing Order Re Civil Cases at 6 ("Standing Order") ("The Court is primarily interested

in the number of hours spent per task and per attorney, along with the effective billing rate associated with those hours.").

17. The second, "final discount" was applied across-the-board in the fee motion to ensure the reasonableness of the overall request, both in the general sense of reflecting the "good billing judgment" described in the case law, but also more specifically to make certain that the request would not exceed the amount that the clients ultimately paid considering other potential pending discounts or credits. For this reason, we reduced the approximately $6.9 million discounted fee number to a final discounted request of $6.1 million. I have checked our internal accounting system in connection with preparing this declaration, and it reflects that Amazon and Twitch have in fact paid in excess of $7.25 million in attorney fees (exclusive of costs) to defend this case.

18. Second, Mr. Knapton suggests that Amazon and Twitch failed to comply with the Court's standing order regarding fee motions. *See* Knapton Decl. ¶ 11. The Court's standing order requires that "[a] party moving for attorneys' fees must provide the Court with a chart, in the format set forth below, summarizing the hours expended on the major tasks in the case. While the Court has suggested several categories of tasks, the moving party may add or modify categories as necessary." Standing Order at 6. The Court's suggested categories include "Compl. And Pre-Compl. Investigation"; "Discovery"; "Motion Practice (specify motion)"; "Settlement Efforts"; "Client Communication"; and "Miscellaneous (describe)." Here, we included all the suggested categories except for "Settlement Efforts," which was not applicable. *See* Gregorian Ex. 6 (including the categories: "Investigate/Respond to PersonalWeb's Claims"; "Fact Discovery," and "Expert Discovery"; "Case Management" (which included client correspondence); and seven distinct categories for motions). Per the Court's suggestion, we also included additional categories, *e.g.* Infringement Contentions, Invalidity Contentions, Damages Contentions, Claim Construction, and Federal Circuit Appeal, in order to help clarify the work performed and assist the Court's review. If there is additional or different information the Court would like, Amazon and Twitch are willing to provide it.

FENWICK & WEST LLP
ATTORNEYS AT LAW

SUPPL. GREGORIAN DECL. ISO AMAZON AND TWITCH MOTION FOR ATTORNEY FEES AND COSTS    6    Case Nos.: 5:18-md-02834-BLF; 5:18-cv-00767-BLF' 5:18-cv-05619-BLF

I declare under penalty of perjury under the laws of the United Sates that the foregoing is true and correct. Executed in Mount Desert, Maine on this 16th day of November 2020.

*Todd R Gregorian*
_____
Todd R. Gregorian