United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: PERSONALWEB TECHNOLOGIES, LLC ET AL., PATENT LITIGATION | Case No. 18-md-02834-BLF |
| AMAZON.COM, INC., and AMAZON WEB SERVICES, INC.,<br><br>Plaintiffs<br>v.<br><br>PERSONALWEB TECHNOLOGIES, LLC and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Defendants, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Re: ECF 636]<br><br>Case No.: 5:18-cv-00767-BLF<br><br>[Re: ECF 184]<br><br>Case No.: 5:18-cv-05619-BLF<br><br>[Re: ECF 88] |
| PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC,<br><br>Plaintiffs,<br>v.<br><br>TWITCH INTERACTIVE, INC.,<br><br>Defendant. | |

Having found this case exceptional under 35 U.S.C. § 285, the Court must now determine the amount of reasonable attorneys' fees and costs owed at the end of this multidistrict litigation ("MDL") for alleged patent infringement that ensnared Amazon and over 80 of its customers. In February 2020, Defendants Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively "Amazon") prevailed against Plaintiff PersonalWeb Technologies, LLC ("PersonalWeb") at summary judgment and judgment was entered in favor of all Defendants. ECF 381; ECF 578; ECF 643. After an August 6, 2020 motion hearing, the Court found the case exceptional and awarded Amazon attorney fees and costs but, upon request of PersonalWeb,

reserved the question of the reasonableness of Amazon's requested fees. H'rg, ECF 625; Order Awarding Fees, ECF 636 at 34. In its prior motion, Amazon requested attorney fees totaling $6,100,000.00 and non-taxable expenses of $323,668.06. Mot. for Attorney Fees and Costs ("Mot."), ECF 593 at 15. Amazon also reserved its right to submit a supplemental fee request for future fees related to preparing the fees motion. Gregorian Declaration ("Gregorian Decl.") ¶ 21, ECF 592-1. Now, PersonalWeb challenges the reasonableness of Amazon's request. Suppl. Br., ECF 644. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.[1]

## I.    BACKGROUND

Separate from this MDL, in December 2011, PersonalWeb commenced a patent infringement suit in Texas federal court against Amazon and its customer Dropbox, Inc. *See PersonalWeb Techs., LLC v. Amazon.com Inc.*, No. 6:11-cv-00658 (E.D. Tex. Filed Dec. 8, 2011) (the "Texas Action"). PersonalWeb eventually stipulated to dismissing its claims with prejudice, ending the action. ECF 315-7; ECF 315-8. Four years later in January 2018, PersonalWeb resurrected its claims, filing over 85 lawsuits across the country against various Amazon customers for their use of Amazon's Simple Storage Service ("S3") and alleging infringement of the same patents implicated in the Texas Action. *See* ECF 295; ECF 1, Schedule A. Amazon quickly intervened to defend its customers, and counterclaims from both parties ensued. *Amazon.com, Inc. et al v. Personal Web Technologies, LLC et al*, 18-5:18-cv-00767-BLF (N.D. Cal. Filed February 5, 2018) (the "DJ Action"), ECF 62, 71.

In June 2018, the cases were consolidated into the current MDL proceeding and assigned to this Court. Compl., ECF 1. With Plaintiff's approval, the Court selected the Twitch case as the representative customer action to proceed and stayed all other customer cases pending resolution. ECF 313. In two phases, the Court granted Amazon's motions for summary judgment as to all claims. ECF 381; ECF 578.

On March 20, 2020, Amazon moved for attorney fees and costs. Mot. On October 6, 2020, this Court granted the Motion and concluded that the case was exceptional

---

[1] A detailed breakdown of the Court's ruling can be found in Appendix A.

because (1) PersonalWeb's infringement claims related to Amazon S3 were objectively baseless and not reasonable when brought because they were barred due to a final judgment entered in the Texas Action; (2) PersonalWeb frequently changed its infringement positions to overcome the hurdle of the day; (3) PersonalWeb unnecessarily prolonged this litigation after claim construction foreclosed its infringement theories; (4) PersonalWeb's conduct and positions regarding the customer cases were unreasonable; and (5) PersonalWeb submitted declarations that it should have known were not accurate.

Order Awarding Fees at 33. Because PersonalWeb failed to object to the reasonableness of Amazon's requested fees in its opposition brief, the Court ordered supplemental briefing. *Id.* PersonalWeb filed its Supplemental Brief on October 30, 2020. Suppl. Br., ECF 644. Amazon filed its Response on November 16, 2020. Response, ECF 646.

## II.     LEGAL STANDARD

### A.  Exceptional Case Status

The first issue to resolve is the proper methodology of calculating the amount of attorneys' fees to which Amazon is entitled. In patent infringement actions, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285*; see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). Supreme Court precedent determining the reasonableness of fees applies uniformly to all federal fee-shifting statutes permitting the award of reasonable fees, such as § 285. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Furthermore, courts "apply Federal Circuit law to the issue of attorney fees in patent infringement cases." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). District courts have "'considerable discretion' in determining the amount of reasonable attorney fees under § 285" because of "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Homeland Housewares, LLC v. Sorensen Research*, 581 Fed. Appx. 887, 881 (Fed. Cir. 2014) (quoting *Bywaters v. U.S.*, 670 F.3d 1221, 1228 (Fed. Cir. 2012)) (internal quotation marks omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Court has already determined that this case is exceptional, meriting an award of

attorneys' fees. *See* Order Awarding Fees; *see also Octane*, 572 U.S. at 555 ("a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."). The parties now dispute the implication of this finding. PersonalWeb urges this Court to apply a "but for" standard that awards fees accrued litigating frivolous conduct and excludes fees accrued litigating non-frivolous conduct. *See* Suppl. Br. at 1-2. Amazon counters that awarding fees related to discrete acts of litigation misconduct is the incorrect standard to apply. Response at 1. This Court agrees with PersonalWeb that it should apply the "but for" standard as described in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), but is mindful that there are limits to the degree of parsing required. *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 881 (Fed. Cir. 2014) ("We decline, however, to require such granularity from the district court, particularly because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees." (quoting *Octane*, 572 U.S. at 554).

PersonalWeb's proposed methodology originates in *Fox v. Vice*, 563 U.S. 826 (2011). There, the Supreme Court held that when a plaintiff asserts both frivolous and non-frivolous claims, the defendant may recover only the amount incurred because of the frivolous claims. *Id.* at 826. In such cases, fees are determined according to "whether the fees requested would not have accrued but for the" misconduct. *Id.* at 839-40; *see also Goodyear*, 137 S. Ct. at 1187.

Several years later, the Supreme Court applied the "but for" standard to a court's inherent authority to sanction a litigant for bad faith conduct by ordering it to pay the other side's legal fees. *Goodyear*, 137 S. Ct. at 1183-84. It explained that fee-shifting in the sanction context must be compensatory rather than punitive. *Id.* at 1186. As such, "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* An award that "extends further than that—to fees that would have been incurred without the misconduct—then . . . crosses the boundary from compensation to punishment. *Id.* Hence, a "causal connection" is required between the misbehavior and the legal fees imposed, which "is most appropriately framed as a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct.'" *Id.* at 1186-87 (quoting *Fox*, 563 U.S. at 836)). The Federal Circuit has since applied

this reasoning in the patent context, explaining that fees awarded under § 285 are "compensatory, not punitive" and "[i]n such a statutory sanction regime, a fee award may go no further than to redress the wronged party for losses sustained." *In re Rembrandt Techs. LP Patent Litig*., 899 F.3d 1254, 1279 (Fed. Cir. 2018) (quoting *Goodyear*, 137 S. Ct. at 1186) (internal marks omitted). "Critically, the amount of the award must bear some relation to the extent of the misconduct." *Id.*

Amazon emphasizes that *Goodyear* applied the "but for" fee-shifting methodology in a different context, where the court was concerned with its inherent power to sanction. Response 1. But *Fox* concerned a § 1983 claim where the court dismissed the plaintiff's federal claims with prejudice after the plaintiff admitted they were invalid. 563 U.S. at 830. In that case, the Supreme Court was considering § 1988, which allowed an award of reasonable fees to a prevailing party in certain civil rights cases. *Fox*, 563 U.S. at 829-30. It reversed the district court's grant of fees for defending the entire suit in federal court, holding that the "but for" test applied. *Id.* at 839-40; *see also Rambus Inc. v. Infineon Techs*. AG, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (holding that where a court finds a case exceptional, the amount of the award must relate to the misconduct). And numerous courts have since applied the *Fox-Goodyear* standard to § 285 assessments. *See, e.g.*, *In re Rembrandt Tech. LP Patent Litigation*, 899 F.3d 1254 (Fed. Cir. 2018); *Flowerider Sur, Ltd. v. Pac. Surf Designs, Inc.*, No. 315-cv-01879-BEN-BLM, 2020 WL 5645331 (S.D. Cal. Sept. 22, 2020); *Indus. Print Tech., LLC v. Cenveo, Inc.*, No. 3:15-cv-01195-M, 2020 WL 5057738, (N.D. Tex. Aug. 26, 2020); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038, 1043 (N.D. Cal. 2018); *Envtl. Mfg. Sol., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298 (M.D. Fla. Aug. 14, 2017).

Amazon contends that § 285 permits the Court to award fees for an exceptional case based on the "totality of the circumstances," which allows for an award for the entire case, including any subsequent appeals. Response 1 (citing *Therasense, Inc. v. Beton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014). In *Goodyear*, the Supreme Court explained that "[i]n *exceptional cases*, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." 137 S. Ct. at 1186 (emphasis added). But the Supreme Court explicated its definition of "exceptional cases" by providing an example of a case where "everything

the defendant did—his entire course of conduct throughout, and indeed preceding, the litigation—was part of a sordid scheme to defeat a valid claim." *Id.* at 1188 (internal citations and quotation marks omitted) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991)). Such conduct, which was also in the sanctioning context, was so egregious that it amounted to "fraudulent and brazenly unethical efforts." *Id.* at 1188 (quoting *Chambers*, 501 U.S. at 58). In other words, there are circumstances in which a case may be exceptional under § 285, but the prevailing party is nonetheless not entitled to full attorneys' fees. *See, e.g., Rembrandt*, 899 F.3d at 1267, 1280 (Fed. Cir. 2018) (affirming a case as exceptional under § 285, but concluding that the district court nonetheless failed to "establish at least some 'causal connection' between the misconduct and the fee award").

The Federal Circuit has upheld a full award of attorney fees—but it was "against a party whose 'extensive misconduct was enough to compromise an abusive pattern or a vexatious strategy that was pervasive enough to infect the entire litigation." *Rembrandt*, 899 F.3d at 1279 (citing *Monolithic Power Sys. Inc. v. O2 Micro International Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013)). Describing *Monolithic Power*, the Federal Circuit in *Rembrandt* explained that the full award was proper only because the party's "rampant misconduct so severely affected every stage of the litigation." *Id.* at 1279. In *Rembrandt*, however, the misconduct was not so egregious, meaning the full award that the district court granted was not warranted. *See Rembrandt*, 889 F.3d at 1277-80 ("Rembrandt instead argues that the fee award is excessive and unreasonable because the district court failed to establish a causal connection between the claimed misconduct and the fees awarded"). Unlike *Monolithic Power*, in *Rembrandt* "the claimed misconduct affected only some patents asserted against some defendants." 889 F.3d at 1280. The Federal Circuit remanded so that the district court could reassess the amount because "the district court did not establish a causal connection between the misconduct and [the] fees, and it did not offer any other reason for its fee award" as required by *Goodyear. Rembrandt*, 889 F.3d at 1280.

Courts in this Circuit have also applied the "but for" test in the § 285 context. Analyzing the underlying policy reasons for the Supreme Court's applying the "but for" standard to § 1988, Judge Illston held that it applied to an infringement case where the nonmovant dropped one of its patent

United States District Court
Northern District of California

claims after a motion to dismiss was granted in part and denied in part. *Cave Consulting*, 293 F. Supp. 3d at 1049. And Judge Benitez applied the "but for" standard to determine the reasonableness of the time expended litigating the case in *Flowerider Sur*, 2020 WL 5645331, at *5-6.

This Court finds that the "but for" standard articulated by *Goodyear* applies, as PersonalWeb's misconduct did not so infect the case that a full award, without any discernment of a causal connection between the improper acts and the fees accrued, is warranted. In granting fees, this Court concluded that the case was exceptional. Order Awarding Fees at 32. The Court explained that "this case both lacked substantive strength and was litigated in an unreasonable manner" and that PersonalWeb "repeatedly flip flopped its positions to suit the argument of the day" Order Awarding Fees at 33 (internal quotation marks and citation omitted). But the Court also noted that, "[t]aken separately, the fragments of the story might not make PersonalWeb's conduct look exceptional." Order Awarding Fees at 32-33. Elsewhere, the Court pointed to benign examples of PersonalWeb's conduct: "PersonalWeb's infringement positions were not objectively baseless and thus, do not support a finding of an exceptional case." *Id*. at 15. Thus, although the Court concluded that some of PersonalWeb's infringement claims were "objectively baseless and not reasonable when brought," Order Awarding Fees 33, its conduct did not rise to "rampant misconduct" affecting "every stage of the litigation." *Rembrandt*, 889 F.3d at 1279. In other words, the facts here depart from *Monolithic Power* and *Chambers* such that the "but for" standard in *Goodyear* is warranted.

In applying this standard, the Court will exclude requested fees not directly traceable to PersonalWeb's egregious conduct, but will nonetheless continue to assess the totality of the circumstances as directed under *Octane*. Overall, the Court has previously determined that PersonalWeb repeatedly changed its infringement theories—telling the MDL panel that the cases all involved S3, then reporting to this Court that Ruby on Rails was preeminent, until that theory was completely abandoned. And later, ten months into the litigation, PersonalWeb yet again shifted its infringement theories, this time to CloudFront along with a disturbing interlude where it appeared that PersonalWeb pursued claims it did not own and signed court papers without Level 3's consent. After that, PersonalWeb unnecessarily prolonged portions of the case and sought to backtrack on its promise to the Court that Twitch was representative of all customer cases. This misconduct forced

Amazon to expend extra work at nearly every juncture.

### B. Reasonableness of Fees

In examining the reasonableness of fees and in applying the "but for" standard, the mechanics of the determination "does not require a tedious, line-by-line investigation of the hours . . . expended." *Rembrandt*, 889 F.3d at 1280. *Goodyear* details this Court's task:

> This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee-say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. But as we stressed in *Fox*, trial courts undertaking that task need not, and indeed should not, become green-eyeshade accountants . . . . The essential goal in fee shifting is to do rough justice, not to achieve auditing perfection. Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

137 S. Ct. at 1187 (internal brackets, quotation marks, and citations omitted); *see also Flowerider Sur*, 2020 WL 5645331, at *5 (applying the *Goodyear* standard in the § 285 context).

Hence, for guidance on the reasonableness of fees so that this Court may do "rough justice," it still looks to the lodestar amount, which is presumptively reasonable. *Dague*, 505 U.S. at 562; *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1161 (9th Cir. 2018); *see also Flowerider Sur*, 2020 WL 5645331, at *4-6 (applying both the "but for" standard and the lodestar method); *Peach State Labs*, 274 F. Supp. 3d at 1314-27 (same). The lodestar calculation requires examination of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* (citing *Hensley*, 461 U.S. at 433).

The reasonable hourly rate is determined by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stetson*, 465 U.S. 886, 895 n.11 (1984)). The relevant community is typically the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973,

979 (9th Cir. 2008). The prevailing market rate is guided by attorney affidavits as well as "decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience." *Trujillo v. Orozco*, No. 5:17-cv-00566-EJD, 2018 WL 1142311, at *2 (N.D. Cal. Mar. 2, 2018); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The number of hours is based only on the amount of time "reasonably expended on the litigation" and excludes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. The moving party bears the initial burden of providing relevant documentation. *Id.* at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Furthermore, while the lodestar amount provides guidance, "[t]here is no precise rule or formula for making these determinations." *Id.* at 436. A court "necessarily has discretion in making this equitable judgment." *Id.* at 437. As such, as part of its assessment of the reasonable hours, the Court considers "whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct." *Flowerider Sur*, 2020 WL 5645331, at *5.

The following reductions to Amazon's lodestar calculations are based solely on percentage cuts. Although the Court would consider a line-by-line reduction, PersonalWeb has chosen to submit its opposition based on percentage reductions and Amazon does not object to this methodology. The Court thus proceeds in accordance with guidance from the Supreme Court, Federal Circuit, and Ninth Circuit.

## III.   DISCUSSION

In its original motion for fees, Amazon requested "attorney fees from January 8, 2018 through February 29, 2020," amounting to a total of $6,100,000.00 and non-taxable expenses totaling $323,668.06. Mot. at 15. PersonalWeb requests that the Court reduce this request to $1,302,947.86 in fees and $203,300.10 in costs. Suppl. Br. 1. This reduction is based on PersonalWeb's belief that (1) "the majority" of Amazon's request has no relation to the claim and conduct the Court found exceptional and (2) Amazon's counsel engaged in unreasonable billing practices.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### A.     Amazon's Proffered Fee Data

As a preamble, the Court considers PersonalWeb's challenge to the fee data provided by Amazon. *See* Suppl. Br. at 3. This challenge is related to the discount scheme Fenwick & West LLP ("Fenwick") applied to Amazon's fees. In its Motion for Attorney Fees and Costs, Amazon explained that "Amazon and Twitch incurred $6,987,341.17 in fees for Fenwick's work between January 2018, when the case began, through January 2020" after applying "write-offs and discounts." Gregorian Decl. ¶ 19.[2] These write-offs and discounts included an exclusion of "556.3 hours and $189,009.85 of work" from 29 timekeepers. *Id*. ¶ 17. The excluded hours could be traced to "ramp up" time for attorneys who were newly recruited onto the case, as well as other inefficiencies. *Id*. Amazon also received a "final" discount of about 13%, which accounts for Amazon's ultimate $6,100,000.00 fee request. *Id*. ¶ 19; *see also id*., Exh. 6 (detailing effective hourly rate before and after final discount). Amazon is commended for its candid and appropriate billing reductions. That said, its presentation of hours expended has caused some confusion.

PersonalWeb argues that although Amazon represented that it is only requesting fees incurred after applying the discounts described above, its fee request for each category is based on the effective rates of the attorneys before the discount. Suppl. Br. at 3 (citing Gregorian Decl., Exh. 6). And, contrary to the discount scheme described above, PersonalWeb's expert contends that Amazon first multiplied the relevant number of hours billed by the pre-discount billing rate set forth in the Gregorian Declaration. Knapton Declaration, ECF 644-1 ¶ 9. According to PersonalWeb, these calculations resulted in a total of $6,987,341.17 in fees. PersonalWeb's expert concludes that Amazon then wrote-off $189,009.85 in fees and 556.3 hours of time from $6,987,341.17 to reach Amazon's ultimate request of $6,100,000.00. *See id*. ¶ 10 ("Based on my review of Fenwick's invoices, this exclusion is apparently what comprises the 'Final Discount' that results in the $6,100,000.00 in requested fees."). The Court is puzzled by this conclusion, not least because (1) Amazon clearly and cogently laid out the how it arrived at the $6,100,000.00 figure, *see* Gregorian Decl. ¶¶ 17-19, and (2) PersonalWeb's explanation does not account for almost $700,000.00 in fees.

---

[2] Amazon "in fact [has] paid in excess of $7.25 million in attorney fees" to defend this case. Gregorian Supplemental Declaration ¶ 17, ECF 646-1.

The Court has thoroughly examined the documentation provided by Amazon. Upon totaling the amounts in Amazon's proffered Breakdown of Categories table, the Court discovered that the fees totaled $6,987,341.17—not $6,100,000.00. *See id*. In other words, as PersonalWeb argued, this table is a result of multiplying hours billed by the effective billing rate *before* the final discount. While Amazon provided the Court with another table titled Overview of Totals, this table only details the total billed hours and effective billing rate *after* the final discount was applied for each category, requiring the Court and PersonalWeb to calculate the total requested fee for each category. Amazon's decision to proffer a detailed fee table based only on pre-discount billing rates is unnecessary in light of Defendant's request for percentage-based deduction. *See* Gregorian Decl., Exh 6 at 2-12. The Court thus relies on the "Total Billed Hours" and "Effective Rate with Final Discount" figures in the Overview of Totals table to conduct the below analysis. *See* Gregorian Decl., Exh 6 at 2-12. These figures are also referenced in Defendant's supplemental brief. *See generally* Suppl. Br.

### B. *Fox-Goodyear* "But For" Standard

The Court first considers PersonalWeb's argument that "the majority" of Amazon's fee request has no relation to the claim and conduct the Court found exceptional. PersonalWeb generally contends that Amazon should only be able to recover for three categories of work: "S3 only" issues, post claim construction, and changed infringement positions. Suppl. Br. at 3. For the reasons discussed below, the Court disagrees and grants the lion's share of Amazon's fee request.

### 1. Case Management

Amazon seeks to recover $1,079,001.52 in attorneys' fees for 2143.3 hours of work related to case management. Gregorian Decl., Exh. 6. PersonalWeb argues that these hours should mostly be excluded given that "Amazon has provided no evidence that the vast majority of time spent on 'Case Management' would not have otherwise been expended by Amazon since 'S3 only' infringement was removed relatively early in the case (before most discovery and claim construction)." Suppl. Br. at 3. It contends Amazon should only receive $269,750.38 in this category. *Id*. at 4. Amazon replies that "[t]his complex patent MDL required a significant amount of case management and conference time, including coordination with the more than 80 parties in

United States District Court
Northern District of California

the MDL. The case law recognizes that this time may be not only necessary, but the most efficient way to coordinate work on the case." Response at 5.

PersonalWeb's argument that Amazon should only receive $269,750.38 out of $1,079,001.52 in fees implies that PersonalWeb's misconduct was only responsible for about 25% of Amazon's case management needs. Not so. PersonalWeb's frivolous conduct was a significant contributor to the need for case management. *See generally* Order Awarding Fees. Nonetheless, Amazon's request requires a haircut. Although it is particularly difficult to attribute case management activities to the particular misconduct present in this case, PersonalWeb's ever-shifting infringement theories—S3, Ruby on Rails, the late emergence of CloudFront and complete abandonment of Ruby on Rails, and, finally, PersonalWeb's extraordinary declaration that Twitch was not a representative customer case only fifteen months after insisting just the opposite—support Amazon's need for significant case management efforts. Thus, the Court will reduce case management fees by 25% to reflect a fair reduction related to otherwise necessary activities. The Court reduces the lodestar by $269,750.38 in fees and 535.83 hours. The Court determines Amazon is entitled to $809,251.14 in fees for 1607.5 hours of work in this category.

### 2.  MDL

Amazon seeks to recover $145,613.05 in attorneys' fees for 296.8 hours of work related to MDL. Gregorian Decl., Exh. 6. PersonalWeb argues that "Amazon should not receive fees here because the Court held that PersonalWeb's conduct to win centralization was not exceptional since PersonalWeb 'did not hide the ball as to Ruby on Rails from the MDL Panel.'" Suppl. Br. at 4 (citing Order Awarding Fees at 16). Amazon responds that "it was Amazon's . . . presence in the MDL that made it possible for the Court to resolve the case as efficiently as it did. And had the Court accepted PersonalWeb's proposal to have multiple customer cases go forward, the MDL proceeding would have been significantly more expensive." Response at 3.

The Court agrees with Amazon. PersonalWeb's argument takes the Order Awarding Fees drastically out of context, and illustrates that the company continues to "slice and dice this case in a way that gave it an escape hatch." Order Awarding Fees at 27. The Court previously concluded in its extensive Order Awarding Fees that "PersonalWeb took advantage of the MDL status" and

engaged in conduct that "'stands out from others' as exceptional." *Id*. at 26-27. For example, the Court concluded that PersonalWeb adopted "shifting positions in a final attempt to unravel the MDL after summary judgment and to keep some of the customer cases in play." *Id*. at 25-26. Because Amazon would have not incurred these fees but for PersonalWeb's frivolous conduct, the Court determines Amazon is entitled to $145,613.05 in fees for 296.8 hours of work in this category.

### 3.  Investigating and Responding to PersonalWeb's Claims

Amazon seeks to recover $212,047.88 in attorneys' fees for 410.5 hours of work related to investigating and responding to PersonalWeb's claims. Gregorian Decl., Exh. 6. PersonalWeb argues all but $41,709.65 of these fees should be excluded because "[o]ut of the 84 complaints filed by PersonalWeb, only seven solely allege claims of S3 infringement and these were not filed until September 12, 2018." Suppl. Br. at 4. According to PersonalWeb, "the majority of hours spent investigating and responding to PersonalWeb's complaints cannot be attributed to the 'S3 only' claims, and because Amazon would have incurred most of the fees in this category even if PersonalWeb had not alleged its 'S3 only' infringement claims, they should not be included." *Id*. Amazon responds that "[t]hese costs relate entirely to Amazon's attempt to defend claims that the Court has already found were baseless, and to do so in the most efficient way possible." Response at 2.

PersonalWeb, again, reads this Court's Order Awarding Fees far too narrowly. PersonalWeb's abandoned infringement theories serially dominated the case, leading to unnecessary work across multiple categories of litigation. The fees in this category include time expended "investigating and answering PersonalWeb's complaints against Twitch and Amazon's customers and PersonalWeb's counterclaims against Amazon; investigating the accused technology; and providing technology tutorials to this Court during case management conferences." Gregorian Decl. ¶ 22c; *see, e.g., id.* Exh. 4 at 11 (time entry for "Investigate infringement allegations re: Ruby on Rails."). PersonalWeb's flavor-of-the-week strategy required Amazon to expend substantial time investigating PersonalWeb's ever-shifting claims. The Court will reduce investigative fees by 25% to reflect a fair reduction related to otherwise necessary activities. The Court reduces the lodestar by $53,011.97 in fees and 102.63 hours. Amazon is entitled to $159,035.91 in fees for 307.88 hours

United States District Court
Northern District of California

of work in this category.

### 4. Declaratory Judgment Complaint

Amazon seeks to recover $83,411.31 in attorneys' fees for 174.1 hours of work related to Amazon's declaratory judgment complaint. Gregorian Decl., Exh. 6. PersonalWeb argues that Amazon should be limited to recovering only $41,705.66 because "even after the Court found that claim preclusion/*Kessler* applied to S3 only infringement claims, that did not fully dispose of Amazon's DJ complaint." Suppl. Br. at 4-5. Amazon responds that "[t]hese costs relate entirely to Amazon's attempt to defend claims that the Court has already found were baseless, and to do so in the most efficient way possible." Response at 2.

The time that Amazon spent on the declaratory judgment complaint cannot solely be traced to PersonalWeb's misconduct. For example, as this Court explained in its Order Awarding Fees, "PersonalWeb correctly notes that it had not asserted the '791 Patent against Amazon or Twitch. Thus, the '791 Patent was a part of this case only in Amazon's Declaratory Judgment Action." Order Awarding Fees at 20 fn. 20 (internal citations omitted). But the Court does not accept PersonalWeb's proposed fee reduction. Amazon filed the declaratory judgment complaint in direct response to the dozens of customer cases filed by PersonalWeb, which were largely predicated on S3 infringement claims. Indeed, PersonalWeb accused S3 in 62 of the 85 cases. *See* ECF 295 at 3 (detailing infringement categories by action). But for this slew of complaints, Amazon would likely not have needed to file the declaratory judgment action. The Court reduces the fees in this category by 15% to account for the fact that some of the time Amazon expended in this category was unrelated to S3. Accordingly, the Court reduces the lodestar by $12,511.70 in fees and 26.12 hours. The Court determines Amazon is entitled to $70,899.61 in fees for 148 hours of work in this category.

### 5. PersonalWeb's Motion to Dismiss

Amazon seeks to recover $33,813.91 in attorneys' fees for 73.4 hours of work related to PersonalWeb's motion to dismiss. Gregorian Decl., Exh. 6. The parties do not dispute that fees related to this motion should be included in the award. *See* Suppl. Br. at 5. The Court determines Amazon is entitled to $33,813.91 in attorneys' fees for 73.4 hours of work in this category.

### 6. Motions to Stay

Amazon seeks to recover $151,668.62 in attorneys' fees for 340.4 hours of work related to Amazon's motions to stay. Gregorian Decl., Exh. 6. PersonalWeb argues that Amazon should not be able to recover any fees related to this motion "[b]ecause the motions to stay sought to avoid consolidation in the MDL, and the Court held that PersonalWeb's MDL efforts were not unreasonable or baseless, Amazon should not recover its fees for its numerous, identical motions to stay." Suppl. Br. at 5 (citing Order Awarding Fees at 16). Amazon again responds that "[t]hese costs relate entirely to Amazon's attempt to defend claims that the Court has already found were baseless, and to do so in the most efficient way possible." Response at 2.

Amazon is entitled to full attorneys' fees arising out of the motions to stay. As the Court explained in its Order Awarding Fees, "starting in January 2018, PersonalWeb filed 85 lawsuits against different Amazon customers in various courts around the country, alleging that those customers' use of Amazon S3 service infringed the same patents at issue in the Texas Action." Order Awarding Fees at 2. And this Court was crystal clear when it found "PersonalWeb's infringement claims related to Amazon S3 were objectively baseless and not reasonable when brought because they were barred due to a final judgment entered in the Texas Action." *Id*. at 33. The Court finds that PersonalWeb's S3-related misconduct led Amazon to file its declaratory judgment suit, the motions to stay, and the motion for a preliminary injunction. What's more, had Amazon not filed the motions to stay, it would have undoubtedly incurred even more legal fees in actively defending the menagerie of customer cases. The Court determines Amazon is entitled to $151,668.62 of fees for 340.4 hours of work in this category.

### 7. Motion for Preliminary Injunction

Amazon seeks to recover $219,985.69 in attorneys' fees for 454.3 hours of work related to Amazon's motion for a preliminary injunction. Gregorian Decl., Exh. 6. PersonalWeb argues that fees for these hours are not recoverable because "this motion was an attempt to supersede consolidation in the MDL." Suppl. Br. at 5. Amazon again responds that "[t]hese costs relate entirely to Amazon's attempt to defend claims that the Court has already found were baseless, and to do so in the most efficient way possible." Response at 2.

For the same reasons articulated in Section III.B.6, the Court finds that PersonalWeb's

1
2
3

misconduct is a "but for" cause of the attorneys' fees Amazon incurred related to the motion for a preliminary injunction. The Court determines Amazon is entitled to $219,985.69 of fees for 454.3 hours of work in this category.

4
5
6
7
8

### 8.   Summary Judgment on Claim Preclusion and the *Kessler* Doctrine

Amazon seeks to recover $592,831.33 in attorneys' fees for 1050.3 hours of work related to summary judgment on claim preclusion and *Kessler* doctrine issues. Gregorian Decl., Exh. 6. The parties do not dispute that fees related to this motion should be included in the award. Suppl. Br. at 5. The Court determines Amazon is entitled to $592,831.33 in attorneys' fees for 1050.3 hours of work in this category.

9
10
11
12
13
14

### 9.   Motion for Judgment on the Pleadings

Amazon seeks to recover $147,464.68 in attorneys' fees for 263.9 hours of work related to Amazon's motion for judgment on the pleadings. Gregorian Decl., Exh. 6. PersonalWeb argues that "[b]ecause the Court denied the entire MJOP, Amazon should not be awarded any fees on its failed motion." Suppl. Br. at 5. Amazon responds that "PersonalWeb accused CloudFront for the first time ten months into the case—one of the changes in infringement positions that the Court found made the case exceptional." Response at 3.

15
16
17
18
19
20

The Court agrees with PersonalWeb. Amazon moved for judgment on the pleadings alleging that PersonalWeb lacked standing to bring infringement claims against CloudFront. *See* ECF 413. The Court easily resolved this motion in favor of PersonalWeb. *See* ECF 578 at 23-26. Even crediting Amazon's attack on the timeliness of PersonalWeb's claims against CloudFront, the Court cannot impute misconduct to PersonalWeb based on a failed litigation decision by Amazon. The Court determines Amazon is not entitled to fees based on time spent on its motion for judgment on the pleadings. The Court reduces Amazon's lodestar by $147,464.68 in fees and 263.9 hours.

21
22
23
24
25

### 10.   Infringement Contentions

Amazon seeks to recover $72,896.40 in attorneys' fees for 151.7 hours of work related to PersonalWeb's infringement contentions. Gregorian Decl., Exh. 6. PersonalWeb argues these fees should be excluded because "PersonalWeb's infringement contentions as to S3 and CloudFront were very similar, except some functions performed by S3 were performed by CloudFront instead. As

United States District Court
Northern District of California

United States District Court
Northern District of California

such, any fees Amazon expended analyzing PersonalWeb's infringement contentions relating to S3 applied equally to the S3/CloudFront combination that survived the claim preclusion summary judgment motion." Suppl. Br. at 6. Amazon responds that it "had to perform all this work as part of its defense of an exceptional case that the Court did find 'substantively weak' and 'unreasonably litigated.'. . . Given the case schedule, Amazon could not have avoided drafting the contentions without waiving its defenses." Response at 3-4.

The Court agrees with Amazon. As Amazon correctly argued in its supplemental briefing, the case schedule required Amazon to review and respond to PersonalWeb's contentions. Response at 3-4. Buttressing this conclusion is the fact that in June 2019 PersonalWeb moved to amend its infringement contentions in bad faith. *See* Order Awarding Fees at 24-26. This choice required Amazon to expend even more time in this category. *Id*. The Court determines Amazon is entitled to $72,896.40 in fees for 151.7 hours of work related to infringement contentions.

### 11. Invalidity Contentions

Amazon seeks to recover $139,924.68 in attorneys' fees for 329.7 hours of work related to Amazon's invalidity contentions. Gregorian Decl., Exh. 6. PersonalWeb argues that "Amazon never argued invalidity in any of their summary judgment motions, did not allege invalidity as an area that should weigh in favor of exceptionality in its Motion, and invalidity was neither related to any specific customer defendant nor 'S3 only' specific." Suppl. Br. at 6 (internal citation omitted). Amazon again responds that it "had to perform all this work as part of its defense of an exceptional case that the Court did find 'substantively weak' and 'unreasonably litigated.' For example, Amazon's invalidity contentions would not have been needed at all but for PersonalWeb filing 80+ baseless lawsuits that it then unreasonably prolonged by changing its theories repeatedly." Response at 3.

For similar reasons as those articulated in Section III.B.10, the Court finds that PersonalWeb's misconduct is a "but for" cause of the attorneys' fees Amazon incurred related to invalidity contentions. Moreover, that Amazon never argued invalidity in its summary judgment motions does not mean that PersonalWeb's misconduct did not require Amazon to complete this work. The Court determines Amazon is entitled to $139,924.68 of fees for 329.7 hours of work in

this category.

### 12. Damages Contentions

Amazon seeks to recover $10,745.50 in attorneys' fees for 22.7 hours of work related to damage contentions. Gregorian Decl., Exh. 6. PersonalWeb argues that these fees should be excluded as "Amazon restricted their damages contentions solely to CloudFront infringement" and "the Court did not find PersonalWeb's CloudFront infringement claims were baseless." Suppl. Br. at 6. Amazon again responds that "Amazon had to perform all this work as part of its defense of an exceptional case that the Court did find 'substantively weak' and 'unreasonably litigated.'. . . Given the case schedule, Amazon could not have avoided drafting the contentions without waiving its defenses." Response at 3-4.

The Court agrees with PersonalWeb. Amazon does not dispute that this fee category only covers damage contentions for CloudFront infringement claims. These fees cannot be fairly traced to PersonalWeb's misconduct.[3] The Court determines Amazon may not recover requested attorneys' fees for this category. The Court reduces Amazon's lodestar by $10,745.50 in fees and 22.7 in hours of work.

### 13. Claim Construction

Amazon seeks to recover $520,714.93 in attorneys' fees for 953.9 hours of work related to claim construction. Gregorian Decl., Exh. 6. PersonalWeb argues that these fees should be excluded because "the Court did not find that the constructions advanced by PersonalWeb were baseless or presented in an unreasonable manner." Suppl. Br. at 6. Amazon responds that "such fees were specifically incurred due to PersonalWeb's pursuit of weak claims that each had multiple flaws (as shown by the Court's summary judgment ruling). The Court also expressly found PersonalWeb's attempt to prolong the case by reinterpreting the Court's claim constructions made the case exceptional." Response at 5.

The Court finds that PersonalWeb's misconduct is a "but for" cause of some of the fees incurred by Amazon in this category. For example, the Court found that "PersonalWeb's attempt to

---

[3] Amazon may have been entitled to recover for hours spent on damages contentions for other claims, had it requested them. That question is not before the Court.

work around the Court's claim construction ruling was egregious and exceptional" in part because "[t]he Court's claim construction order had clearly construed the terms 'unauthorized or unlicensed' as 'not compliant with a valid license' and 'authorization' as 'a valid license.'" Order Awarding Fees at 21. Yet the Court cannot trace all of the requested fees to PersonalWeb's misconduct. *See, e.g., id.* at 14 ("PersonalWeb made reasonable, albeit unsuccessful, arguments that the terms authorized/unauthorized or licensed/unlicensed should be given their plain and ordinary meaning."). The Court reduces Amazon's requested fees by 25% to account for the fact that some of this time can be traced to necessary litigation activities unrelated to PersonalWeb's misconduct. The Court reduces the lodestar by $130,178.73 in fees and 238.48 hours. Amazon is entitled to $390,536.20 in fees for 715.43 hours of work in this category.

### 14. Fact Discovery

Amazon seeks to recover $1,331,489.17 in attorneys' fees for 2,753.4 hours of work related to fact discovery. Gregorian Decl., Exh. 6. PersonalWeb argues that "[a]fter the March 13, 2019 order granting in part Amazon's motion for summary judgment on claim preclusion/*Kessler*, fact discovery did not relate to S3, and instead was limited to PersonalWeb's other 'reasonable infringement arguments.'" Suppl. Br. at 6. It seeks to limit this category to $332,872.29, which represents "fees sought . . . from the beginning of the case through March 13, 2019." *Id.* Amazon responds that this request "ignor[es] the other reason that the Court found the case exceptional." Response at 4.

The Court agrees with Amazon. As the Court detailed in its Order Awarding Fees, PersonalWeb's misconduct continually gave Amazon the run around, increasing the amount of fact discovery in which Amazon needed to engage. Thus, the Court will reduce fact discovery fees by 30% to reflect a fair reduction related to otherwise necessary activities. The Court reduces the lodestar by $399,446.75 in fees and 826 hours. Amazon is entitled to $932,042.42 in fees for 1927.38 hours of work in this category.

### 15. Discovery Disputes & Motions to Compel

Amazon seeks to recover $307,874.85 in attorneys' fees for 554.3 hours of work related to discovery disputes and motions to compel. Gregorian Decl., Exh. 6. For the reasons outlined in the

United States District Court
Northern District of California

Fact Discovery section, PersonalWeb argues that this request should be limited to $76,969.71. Suppl. Br. at 6-7. Amazon again responds that this request "ignor[es] the other reason that the Court found the case exceptional." Response at 4.

For similar reasons as those articulated in Section III.B.14, the Court agrees with Amazon. However, not all of Amazon's requested fees in this category can be traced to PersonalWeb's misconduct. For example, in its Order Awarding Fees, the Court documented a discovery dispute during which Amazon argued PersonalWeb was withholding "damaging" information by asserting privilege. Order Awarding Fees at 11. When the Court held a case management conference regarding the parties' purported discovery dispute, Amazon withdrew it arguments on the issue. Order Awarding Fees at 11 fn. 5. To reflect the fact that both parties engaged in conduct leading to discovery disputes and motions to compel, the Court will reduce fees in this category by 50%. The Court reduces the lodestar by $153,937.43 in fees and 277.15 hours. Amazon is entitled to $153,937.43 in fees for 277.15 hours of work in this category.

### 16. Expert Discovery

Amazon seeks to recover $687,311.13 in attorneys' fees for 1,593.1 hours of work related to expert discovery. Gregorian Decl., Exhs. 5-6. PersonalWeb argues that "Amazon may be entitled to certain attorneys' fees incurred relating to Mr. de la Iglesia's expert report and more specifically, to those fees incurred rebutting Mr. de la Iglesia's report . . . [O]nly fees in this category incurred after August 23, 2019, when Mr. de la Iglesia's report was served, should be considered." Suppl. Br. at 7. Accordingly, PersonalWeb requests that the Court limit this fee category to $102,275.85. *Id*. Amazon responds that it is entitled to full attorneys' fees in this category because "[m]ost expert discovery fees could have been avoided if PersonalWeb had not engaged in" unreasonable conduct. Response at 5. It also argues that the caselaw on which PersonalWeb relies refers to retained expert fees]. *Id*.

The Court finds that neither party correctly identifies the proper fee award here. As a starting point, certainly Amazon is entitled to fees expended rebutting the improper expert report submitted by Mr. de la Iglesia—but that is not the full extent of the proper fee award. Amazon was also forced to expend hours working with experts to defeat the infringement theory of the day propounded by

United States District Court
Northern District of California

PersonalWeb. As outlined in the prior order, Amazon had no choice but to work up its case until each theory was abandoned and start over when a new theory appeared. For this, Amazon is entitled to a substantial portion of fees in this category. The Court also highlights that PersonalWeb's fee expert does not offer any analysis of Amazon's expert discovery that was actually devoted to theories outside of the exceptional case order.

Having reviewed the billing records and supporting analysis submitted by Amazon, the Court determines that Amazon expended significant time on expert discovery related to abandoned or discredited theories. The Court will reduce the expert discovery fee request by 35%, which is this Court's best estimate of the time Amazon dedicated to the defense of properly interposed theories of infringement. The Court reduces the lodestar by $240,558.90 in fees and 557.24 hours. Amazon is entitled to $446,752.23 in fees for 1,034.87 hours of work related to expert discovery.

### 17. Summary Judgment for Non-Infringement

Amazon seeks to recover $213,777.16 in attorneys' fees for 370.1 hours of work related to summary judgment for non-infringement. Gregorian Decl., Exh. 6. PersonalWeb argues that these fees should be limited to $160,332.87, which represents a 25% cut, because "Amazon should not be granted any fees associated with the new grounds of non-infringement as the Court recognized that Amazon 'sought a finding of non-infringement as to all the grounds raised in their motions' so that 'the prolongation of the case at that stage did not rest solely on PersonalWeb's shoulders.'" Suppl. Br. at 8 (citing Order Awarding Fees at 22). Amazon believes this proposal is reasonable under the Court's prior order. Response at 6. Upon agreement of the parties, the Court reduces the lodestar by $53,444.29 in fees and 92.53 hours. Amazon is entitled to $160,332.87 in attorneys' fees for 277.6 hours of work in this category.

### 18. PersonalWeb's Rule 54(b) Motion

Amazon seeks to recover $13,705.99 in attorneys' fees for 25.8 hours of work related to PersonalWeb's Rule 54(b) motion. Gregorian Decl., Exh. 6. PersonalWeb argues that this fees should be excluded as it "offered to have judgment entered against it, but Amazon declined because it wanted to obtain judgment of non-infringement on additional grounds." Suppl. Br. at 8. Amazon responds that "[t]he Court already found that Amazon and Twitch 'had good reasons' to oppose

PersonalWeb's motion and move for summary judgment" and that "[t]hese fees were necessary to avoid costly piecemeal appeals from the MDL and should be included in the award." Response at 6 (citing ECF 559, Order Awarding Fees).

PersonalWeb's Rule 54(b) Motion was not unreasonable. Although Amazon emphasizes that it had "good reasons" to oppose this motion for efficiency reasons, this alone does not render the motion frivolous or in bad faith. *See* Order Awarding Fees at 22 ("The Court is not so sure" that PersonalWeb's Rule 54(b) motion was "another bad faith gambit" ). The Court determines Amazon is not entitled to fees flowing from this motion and reduces Amazon's lodestar by $13,705.99 in fees and 25.8 hours of work.

### 19. Federal Circuit Appeal

Amazon seeks to recover $135,720.79 in attorneys' fees for 271.1 hours of work related to PersonalWeb's Federal Circuit Appeal. Gregorian Decl., Exh. 6. At the time of the supplemental briefing, PersonalWeb argued that "[t]his appeal is still pending as PersonalWeb's petition for an en banc review remains pending." Suppl. Br. at 8. Amazon responds that, since PersonalWeb filed its brief, the Federal Circuit denied PersonalWeb's petition for rehearing en banc. Response at 6. Amazon also argues that "regardless of the appeal regarding the *Kessler* doctrine, PersonalWeb's S3 claims fail also under the Court's non-infringement summary judgment ruling." *Id.*

On June 17, 2020, the Federal Circuit affirmed this Court's summary judgment order. *See* ECF 606. On November 10, 2020, the Federal Circuit denied PersonalWeb's petition for panel rehearing or rehearing en banc. *See* ECF 645. PersonalWeb's only objection to an award of these fees is abrogated. The Court determines Amazon is entitled to $135,720.79 in attorneys' fees for 271.1 hours of work related to the federal circuit appeal.

### 20. Motion for Attorney Fees and Costs

PersonalWeb requests that the Court reject Amazon's $450,000 request in fees "they claim they incurred between March 2020 and June 24, 2020" associated with their motion for attorneys' fees and costs. Suppl. Br. at 10; *see also* Gregorian Decl. ¶ 21. In its view, this request is punitive and without substantiation. *Id.* Amazon responds that these fees are "fully awardable and routinely granted." Response at 6 (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578

United States District Court
Northern District of California

United States District Court
Northern District of California

(Fed. Cir. 1983). Amazon argues that it could not avoid these costs, that PersonalWeb never offered to pay any part of these fees, and that PersonalWeb's conduct greatly increased the cost of this motion.

The caselaw is on the side of Amazon. Courts have interpreted § 285 to allow for the recovery of fees for time spent on the issue of attorneys' fees itself. *See Central Soya Co*, 723 F.2d at 1578 (Fed. Cir. 1983) (citing with approval *Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1201 (D. Mass. 1982) ("The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting the entire action. These expenses include lawyers' fees for time spent on the issue of attorneys' fees itself. It does, however, find that a reduction is appropriate.")); *see, e.g., Drop Stop LLC v. Jian Qing Zhu*, No. CV 16-07916 AG (SSX), 2018 WL 1407031, at *7 (C.D. Cal. Jan. 22, 2018), *aff'd*, 757 F. App'x 994 (Fed. Cir. 2019). This is particularly true given PersonalWeb created delays in this proceeding by asking the Court to delay its ruling, *see* ECF 594, and by completely failing to raise any arguments about the reasonableness of fees in the original briefing on this motion, thereby necessitating the round of briefing currently before the Court, *see* Order Awarding Fees at 33. In order to evaluate the reasonableness of Amazon's fee request in this category, the Court has requested supplemental documentation as offered by Amazon in its initial motion for fees to support this request. *See* ECF 647. The Court will issue a follow-up order on this portion of the fee request.

### 21. Costs

Amazon seeks $323,668.06 in non-taxable costs. Mot. at 15; Gregorian Decl. ¶ 20. "These costs are related to litigating this case, such as data hosting fees; copy services and delivery charges for depositions, chambers copies and proof of service; transcript order fees; court call fees; expert witness fees; meals and travel costs for attending depositions and hearings; graphic and presentation consultant fees; and research vendor fees." Gregorian Decl. ¶ 20; *see also id.*, Exh. 5 (summary of

costs). PersonalWeb requests that this Court limit an award of costs to $203,300.10. Suppl. Br. at 1. Although PersonalWeb discusses this reduction in the context of expert discovery, its expert justifies the reduction more broadly:

> A total of $370,412.14 is listed – but some of that is marked "BOC" by Amazon indicating that they were also shown on the Bill of Costs and are not now sought. Some are for experts that did not do work that was within the "exceptional case" ambit. Some have only a fully-redacted description. They are all shown and marked as acceptable or not in Exhibit 4.

Knapton Decl. ¶ 56; *see also id.*, Exh. 4. Amazon does not specifically address PersonalWeb's proposed cost reduction. *See generally* Response.

The Court has reviewed Amazon's summary of non-taxable costs and Knapton's associated chart. The Court agrees with PersonalWeb's reduction; as the Court explained above, Amazon may not recover expert fees or costs untethered to the existence of "fraud or bad faith whereby the very temple of justice has been defiled." *MarcTec,* 664 F.3d at 921. PersonalWeb's proposed reduction properly takes into account this limitation. The Court also credits Knapton's finding that some of Amazon's cost entries are redacted. *See* Knapton Decl., Exh. 4 at 12-13. The Court will not award these redacted costs. Finally, the Court highlights that PersonalWeb's proposed cost award amounts to about two-thirds of Amazon's request. This reduction is proportional to the overall fee reduction the Court detailed above, further indicating PersonalWeb's reduction is appropriate. The Court awards Amazon $203,300.10 in non-taxable costs.

\*\*\*

Based on the foregoing, the lodestar is $4,615,242.28 in fees for 9,263.43 hours of work. Amazon is also entitled to $203,300.10 in non-taxable costs. The Court DEFERS ruling on Amazon's request for fees related to the instant motion.

United States District Court
Northern District of California

24

### C.   Reasonable Fee Award

Now that the Court has addressed which fees are attributable to Plaintiffs' misconduct, the Court must determine whether the amount of fees claimed is reasonable. The award of attorney fees under 35 U.S.C. § 285 must be reasonable. The Supreme Court has said that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Dague*, 505 U.S. at 562. There is thus "a 'strong presumption' that the lodestar represents the 'reasonable' fee." *Id.* (citation omitted). Ascertaining what constitutes a "reasonable" fee requires determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Del. Valley Citizens' Council*, 478 U.S. at 564. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* (citing *Hensley*, 461 U.S. at 433). Supreme Court "case law construing what is a 'reasonable' fee applies uniformly to all" federal fee shifting statutes that permit the award of reasonable fees. *Dague*, 505 U.S. at 562.

### 1.   Reasonable Hourly Rate

Reasonable hourly rates for determining the lodestar figure are the "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895; *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008) (holding that "to determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation"). In establishing the reasonable hourly rate, the Court may take into account, among other factors, "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988) (internal marks and citation omitted).

Amazon's fee request is based upon the following effective rates of Fenwick counsel: $905.95 for partner J. David Hadden; $748.60 for partner Sania Shamilov; $699.82 for partner Melanie Mayer; $649.27 for partner Todd Gregorian; $648.27 for associate Philip Hack; $625.92 for associate Ravi Ranganath; $659.85 for associate Allen Wang; $577.55 for associate Elizabeth Hagan; $618.28 for associate Shannon Turner; $406.85 for associate Chieh Tung; $430.06 for associate Crystal Nwaneri; $370.20 for associate TJ Fox; $282.20 for associate Kwan Chan; $282.20 for associate Patrick Doyle; $342.16 for paralegal Robert Winant; and $344.74 for paralegal

Lawrence Gallwas. Gregorian Decl. at 5-6.

"In intellectual property cases, federal courts routinely rely on the American Intellectual Property Law Association ("AIPLA") economic survey results published every other year." *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters*., 2009 WL 9137315, at *3 (citing *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988)); *see also Phigenix, Inc. v. Genentech Inc*., 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) (relying on AIPLA survey rates). The 2019 AIPLA indicates that the mean 2018 billing rate for partners at private firms in the San Francisco area was $665, the median rate was $650, the rate for the third quartile was $826, and the rate for the 90th percentile was $1,023. Gregorian Decl., Ex. 3 at I-29. Although the survey does not contain data for associate billing rates in the San Francisco area, it does generally detail the average billing rates for a partner-track attorneys. *See* Gregorian Decl., Ex. 3 at I-42. For example, it notes that the mean 2018 billing rate was $309 for associates with fewer than five years of IP Law experience, $406 for associates with five to six years of experience, $364 for associates with seven to nine years of experience, $444 for associates with ten to fourteen years of experience, and $405 for associates with fifteen to twenty-four years of experience. *Id*. These figures account for billing rates in areas with far lower costs of living than San Francisco, such as Minneapolis-St. Paul and Philadelphia. *Id*. These rates are comparable to the ones Amazon requests here.

PersonalWeb does not dispute the reasonableness of these rates. Given the reputation of the law firm, the qualifications and responsibilities of these particular attorneys, the complexity of this case, and the results obtained, the Court finds these rates to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

### 2. Reasonable Hours Expended

In determining a reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. "There is no precise rule or formula for making these determinations." *Id*. at 436. "The court necessarily has discretion in making this equitable judgment." *Id*. at 437. Federal Circuit precedent controls the calculation of

attorneys' fees in patent cases. *Bywaters v. United States*, 670 F.3d 1221, 1227–28 (Fed. Cir. 2012) ("we have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction"). However, district courts have "'considerable discretion' in determining the amount of reasonable attorney fees under § 285." *Homeland Housewares*, 581 F. App'x at 881 (internal citations omitted).

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 434. However, the party seeking fees need not provide comprehensive documentation to prevail. *Id.* at 437 & n.12.

There are two means by which a court may determine whether the number of hours is "reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). First, a court may conduct either an "hour-by-hour analysis of the fee request" and exclude those hours for which it would be unreasonable to compensate the prevailing party. Id. at 1203 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). Second, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (citation omitted).

PersonalWeb argues that "due to unreasonable billing," a 50% to 75% cut to the fees and costs for case management and fact discovery is warranted. Suppl. Br. at 8-10. It specifically argues that Amazon's counsel engaged in top-heavy billing and overstaffing on depositions and at meetings. The Court addresses each concern in turn.

### i. Allegations of Top-Heavy Billing

PersonalWeb first argues that "Amazon's Fact Discovery category shows an unreasonable division of labor between senior- and junior-level attorneys." Suppl. Br. at 9 (citing Knapton Decl. ¶ 52). It requests that the Court reduce the fees attributed to Fact Discovery work performed by

United States District Court
Northern District of California

partners Melanie Mayer and Saina Shamilov by 50% from $223,510.68 to $111,755.34. *Id*. Amazon rejects PersonalWeb's characterization and argues that "[p]artner hours account for only 19.6% of this work, over half of which were Ms. Mayer's, who defended multiple depositions and supervised fact discovery." Response at 4 (citing Supp. Gregorian Decl., Exhs. 6, 18). It also argues that "PersonalWeb cites no authority suggesting that these hours are unreasonable or excessive; instead, it points to cases where, unlike here, attorneys 'billed excessive hours for routine and duplicative work.'" *Id*. (quoting *Hernandez v. Taqueria El Grullense*, 2014 WL 2611214, at \*2-3 (N.D. Cal. June 11, 2014)).

Although the Court is sensitive to misallocation of resources by attorneys in the form of top-heavy billing, the Court is satisfied that other reductions imposed in this order and by Amazon itself account for any such billing here. Amazon has already discounted its fees request by 556.3 hours and $189,009.85 of work from 29 timekeepers. Gregorian Decl. ¶ 19. Many of these hours no doubt were hours spent by more junior associates. *See Phigenix, Inc. v. Genentech Inc*., No. 15-CV-01238-BLF, 2019 WL 2579260, at \*16 (N.D. Cal. June 24, 2019). The Court will not cut additional hours from Amazon's request based on top-heavy billing.

### ii.    Allegations of Overstaffing at Depositions

PersonalWeb next argues that Amazon seeks fees "for four partners and more than eight associates to take and defend depositions together." Suppl. Br. at 9 (citing Knapton Decl. ¶ 44). PersonalWeb believes that "it is excessive to have two (or more) attorneys attend the same deposition where only one attorney was handling the deposition." *Id*. (citing *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 879 (N.D. Cal. 2012)). It asks the Court to reduce the fees requested for depositions by 75%, such that Amazon is "entitled to no more than $332,872.29 for Fact Discovery." *Id*. (citing Knapton Decl. ¶ 44). Amazon argues that its depositions were reasonably staffed. Response at 4 (citing Supp. Gregorian Decl., Exh. 17). It also argues that PersonalWeb's contention that two attorneys may not attend a deposition is without merit. Response at 4. Finally, it argues that

> PersonalWeb's other purported evidence for "overstaffing" mischaracterizes the record: (1) it assumes time billed by associates

1
2
3

> was "training time," when those attorneys took or defended the
> depositions in question; and (2) it includes Twitch's in
> house counsel and two summer associates who attended depositions but,
> as PersonalWeb itself acknowledges, were excluded from the fee
> request for that time.

4    *Id*. (citing Suppl. Gregorian Decl., Exh. 18 ¶ 17, Knapton Decl., Exh. 6).

5          Upon review of Amazon's billing records, the Court finds that Fenwick's fee request includes

6    hours billed by, at most, two attorneys per deposition. *See* Supp. Gregorian, Exh. 17. The Court finds

7    this staffing choice reasonable given the complexity of the matter, and PersonalWeb does not cite

8    any caselaw to suggest otherwise. *See Oberfelder v. City of Petaluma*, 2002 WL 472308, at *7 (N.D.

9    Cal. Jan. 29, 2002) ("the attendance of more than two attorneys is not per se duplicative"); *see also*

10   *Lopez v. S.F. Unified Sch. Dist.*, 385 F. Supp. 2d 981, 993-994 (N.D. Cal. 2005) (refusing to reduce

11   fees for multiple attorneys present at a deposition given size and complexity of the case). The Court

12   declines to exclude hours on this basis.

13                    **iii.    Allegations of Numerous Attorneys at the Same Meeting**

14         PersonalWeb challenges Amazon's request for "$1,441,880.00 for 1,860.3 hours spent on

15   internal meetings, notes and calls" because each attorney on Amazon's team billed for his or her

16   attendance at conferences. Suppl. Br. at 9-10 (citing Knapton Decl. ¶ 38). PersonalWeb argues that

17   "good billing judgment" counsels that Amazon's counsel should not bill for every attorney present

18   on calls and meetings. *Id*. at 10. In support of this contention, they cite to cases where courts reduced

19   fee requests by 20-25%. *See, e.g., Our Children's Earth Found. v. U.S. Envtl. Prot. Agency*, No. 13-

20   CV-02857-JSW, 2016 WL 1165214, at *9 (N.D. Cal. Mar. 25, 2016) (reducing requested fees by

21   25% for internal conferences); *S. Yuba River Citizens League & Friends of River v. Nat'l Marine

22   Fisheries Serv*., No. CIV. S-06-2845-LKK, 2012 WL 1038131, at *5 (E.D. Cal. Mar. 27, 2012),

23   *aff'd* 581 F. App'x 693 (9th Cir. 2014) (reducing requested fees by 20% for internal conferences).

24   PersonalWeb, nonetheless, requests a 75% reduction of Amazon's case management fees. Suppl.

25   Br. at 10. Amazon argues that, due to the complex nature of this case, these meetings were necessary

     and efficient. Response at 5. It also argues that it excluded the requests of numerous timekeepers

*United States District Court*
*Northern District of California*

29

from these meetings. *Id.* (citing Supp. Gregorian Decl. ¶ 4). Finally, it notes that caselaw cited by PersonalWeb did not involve complex multidistrict litigation. *Id.*

The Court finds PersonalWeb's request for a 75% reduction of fees borders on ridiculous. As Amazon correctly recognizes, this case is a complex patent MDL that requires significant coordination. And although the Court is often skeptical of the value of incessant meetings involving multiple attorneys, PersonalWeb's expert has done nothing more than provide stock criticism of the meeting and conference hours without identifying any specific irregularities. *See* Knapton Decl. ¶¶ 38-39. Knapton's 75% reduction recommendation is supported solely by his belief that "some sort of adjustment for reasonableness is necessary" and is untethered to any particular meeting or activity.

The Court has reviewed the billing records and concludes that the combination of Amazon's decision to exclude billing requests by 29 timekeepers and the Court's 25% reduction for case management fees amply addresses any over-billing in this category and thus no further deduction is necessary.

***

In sum, the lodestar calculated in Section III.B of this Order is reasonable.

## IV.   ORDER

For the foregoing reasons, Amazon's motion for reasonable attorneys' fees is GRANTED IN PART AND DENIED IN PART. The Court finds that Amazon is entitled to $4,615,242.28 in fees for 9,263.43 hours of work and $203,300.10 in non-taxable costs.

**IT IS SO ORDERED.**

Dated: March 2, 2021

BETH LABSON FREEMAN
United States District Judge